THE UNION MILL COMPANY, Appellant, v. G. H. PRENZ-
LER, Administrator of the Estate of .
L. SEUFFERT, Deceased.

Attachment: ADVICE OF ATTORNEY. Plaintiff in attachment is not relieved of liability for exemplary damages in wrongfully suing out the same, merely because he made a fair statement of all the facts within his knowledge to his attorney, before the writ was sued out, but he must, in good faith, have believed that he had a good ground of attachment.

AMENDMENTS: *Harmless error.* In an action at law, aided by an attachment levied in July, 1894, a refusal to allow plaintiff to file an amendment claiming interest on his account from January, 1895, was harmless, where the jury found that plaintiff's claim was liquidated by the damage resulting to defendant from the attachment.

SPECIAL INTERROGATORIES. The refusal of special interrogatories is not ground for complaint, where the essential facts are embodied in another interrogatory which is submitted.

EXEMPLARY DAMAGES. It appeared that, while plaintiff, who had dealt with defendant for years, was seriously ill, the latter, fearing that he might die, and that they would have to wait a year for their claim if the property went into the hands of an administrator, endeavored, by intimidation and threats of legal process, to induce plaintiff's wife and daughter to turn over some of the property, and failing in this, they sued out a writ of attachment, for the alleged reason that plaintiff was about to convert the property into cash, for the purpose of placing it beyond the reach of creditors. *Held*, that five thousand dollars exemplary damages for wrongful attachment was not so excessive as to be disturbed, on appeal.

Survival of Action: DAMAGES: *Estates of decedents.* The death of plaintiff, pending suit for wrongful attachment, and the substitution of his administrator, will not prevent the recovery of exemplary damages which might have been recovered by decedent himself.

ATTORNEY FEE. Where defendant, in an action aided by attachment, admits plaintiff's claim and recovers on a counter-claim against plaintiff and his sureties for wrongful attachment, the court may allow him attorneys' fees, as part of the costs.

*Same.* The court in an action upon an attachment bond for the wrongful suing out of the attachment, may allow attorneys' fees

for services rendered by attorneys for the attachment debtor in the entire defense to the attachment action, where such defense tended, merely, to show the wrongful issuance of the attachment.

**Change of Venue.** The court in its discretion, may properly deny an application for a change of place of trial on the ground of prejudice, where the affidavits tending to show prejudice are met by an equally large number of counter-affidavits tending to show the contrary, and, if there is any difference in the statements, it is in favor of those made for the party contesting the motion.

**Appeal:** EXEMPLARY DAMAGES. An award by the jury of exemplary damages, in an action for the wrongful suing out of an attachment, will not be disturbed, on appeal, as excessive, except in extreme cases.

REVIEW OF VERDICT. This court will not disturb a verdict supported by the evidence, merely, because it might not reach the same conclusion if it had to try the case anew, on the evidence.

*Appeal from Des Moines District Court.*—HON. JAMES D. SMYTH, Judge.

WEDNESDAY, JANUARY 20, 1897.

THIS is an action at law, aided by attachment, originally commenced against L. Seuffert, to recover the sum of two thousand six hundred and fifty-five dollars, claimed to be due plaintiff for flour and feed sold and delivered. The defendant answered, admitting the claim, and pleading a counter-claim against the plaintiff and sureties upon the attachment bond for the wrongful suing out of the writ. After the filing of the answer, and before the case was called for trial, Seuffert died, and his administrator was substituted. The case was tried to a jury, resulting in a verdict and judgment for defendant in the sum of three thousand one hundred and fourteen dollars. Plaintiff appeals. —*Affirmed.*

*Burns & Sullivan, W. W. Dodge,* and *Stutsman & Stutsman* for appellant.

*Seerley &. Clark* and *Power, Huston & Power* for appellee.

DEEMER, J.—I. Appellant first complains of the ruling of the court denying a motion for change of place of trial. The case was brought for the September, 1894, term of court, and was continued to the November, and afterward to the January, 1895, term. At the January term a trial was begun, and during the progress of the trial defendant died. His administrator was substituted, and, upon this substitution being made, plaintiff moved for a continuance. This motion was sustained, by agreement of parties thereafter made, and the trial of the case was resumed, resulting in a verdict for defendant. A new trial was granted, and the case continued to the April, 1895, term. The motion to change the venue was filed April 13, 1895. The statutes of this state provide that such a motion cannot be made after a continuance, except for a cause not known to the affiant before such continuance. Code, section 2591. It would seem that the motion was filed too late, and for this reason was properly overruled. But, if this be not true, the statute provides that the trial court, in the exercise of a sound discretion, must decide whether a change shall be granted according to the very right and merits of the matter. Code, section 2590. It does not appear that the court abused its discretion in denying the motion. The affidavits filed by appellant tending to show prejudice on the part of the inhabitants of Des Moines county were met by an equally large number of counter-affidavits tending to show the contrary; and, if

there is any difference in the statements, it is in favor
of those made for the defendant, for the witnesses
making them seem to have had the better opportunity
to know of the situation.

II.   Just before the commencement of the last
trial plaintiff asked leave to file an amendment to its
petition claiming interest on its account.   The request
was denied by the court, and error is assigned
on the ruling.   The court below was vested
with a large discretion in such matters, and,
while the rule is to allow amendments, yet to refuse
them is not reversible error, especially where, as in
this case, no prejudice resulted.   The amendment
claimed interest on the account from January
25, 1895.   The action was commenced and the attach-
ment levied in July, 1894.   The jury found that plain-
tiff's claim was liquidated by the damage resulting
from the attachment; hence, plaintiff was not entitled
to interest.   The ruling, even if erroneous, was with-
out prejudice.   Again, the amendment was proposed
on the very day the case was called for trial, and the
practice of allowing amendments at such a time should
not be encouraged.

III.   Plaintiff asked the court to submit the fol-
lowing special interrogatories to the jury:   "(1) Did
the plaintiff, the Union Mill Company, by its presi-
dent, A. McElhinney, make a fair statement of all the
facts within his knowledge to J. F. Burns, an attorney
at law, before the writ of attachment was sued out?
(2) Do you find, on the case submitted as set forth in
interrogatory 1 hereof, that said attorney advised that
a good cause of action and a right to sue out
the writ of attachment existed?"   The request
was refused, but the court did submit the fol-
lowing:   "(3) Was the writ of attachment directed to
be sued out on the advice of J. F. Burns, an attorney
at law, after a fair statement of all the facts at the

time in the possession of A. McElhinney, president of the company?" To this the jury answered: "No; all the fact were not given." It seems to us that this interrogatory embodies all the essential facts called for by the two refused, and that appellant had no cause of complaint. The jury clearly answered all material and relevant matters called for by the two interrogatories which were refused. An affirmative answer to interrogatory 1 would not have been a complete defense, as counsel argue. See *Acton v. Coffman*, 74 Iowa, 17 (36 N. W. Rep. 774); *Myers v. Wright*, 44 Iowa, 38.

IV. Complaint is made of the instructions given by the court, and of the refusal to give certain instructions asked by plaintiff. We need not set out the ones complained of. It is sufficient to say, that they state the law as it has been announced by this court in numerous decisions, and are singularly free from error or misstatement. The instruction, with reference to exemplary damages, closely follows the rule announced in *Nordhaus v. Peterson*, 54 Iowa, 71 (6 N. W. Rep. 77), and *Hurlbut v. Hardenbrook*, 85 Iowa, 606 (52 N. W. Rep. 510). The effect to be given advice of counsel was properly set forth, and instruction No. 13, asked by plaintiff, to the effect that the uncontradicted evidence showed that plaintiff had taken the advice of counsel, was properly refused, because there was a conflict on this point. The jury allowed defendant, as a part of the damages, interest on money which came into the hands of the sheriff, on garnishment proceedings. This is said to be error, because no claim for such damages is made in the counterclaim. We think the matter is sufficiently covered by the pleading, and need give the matter no further consideration. It is further contended, that the court erred in stating the issues to the jury, in not limiting the recovery of exemplary damages to two thousand,

one hundred and twenty dollars and fifty cents. This
is based upon the thought that defendant asked judg-
ment for ten thousand dollars in all, seven thousand,
one hundred and twenty dollars and fifty cents of
which was actual damages. This contention is fully
met by the amendment to the counter-claim, which
claims but two thousand dollars actual damages, and
in all, both actual and exemplary, ten thousand dol-
lars. Complaint is made of the instructions, as to the
burden of proof. There is no merit in this. The
instructions state the rule given by this court in
numerous cases. We need not further refer to the
numerous objections urged against the instructions.
It is sufficient to say, that we find no error.

V. It is said, that the amount of damages
allowed, both actual and exemplary, are excessive,
and are the result of passion and prejudice. The
amount found by the jury as actual damages, was
seven hundred and seventy dollars and six cents; as
exemplary, five thousand dollars.

As to the actual damages, it is sufficient to say
that there was a decided conflict in the evidence as to
each and every claim made by the defendant, and,
under well known rules, we cannot interfere. Defend-
ant claimed that, at the time of the attachment, a
certain account held by him against R. Hodgens & Co.
was good, and that the firm became insolvent after the
attachment was rendered, and that he lost the same.
To prove the solvency and insolvency of the firm, he
introduced a witness, who said he knew their finan-
cial standing, who was permitted to give it as it was
both before and after the attachment. It is said that
this is error, for the reason that the witness based his
testimony on, and had reference to the rating of the
firm by commercial agencies. An examination of the
record discloses that this is not true, and that the

court sustained objections to questions calling for the commercial ratings of Hodgens & Co.

As to the exemplary damages allowed, three objections are made: (1) It is said that the right to recover such damages ceases on the death of the complainant; (2) it is claimed that the evidence shows conclusively that the plaintiff acted on the advice of of counsel; and (3) that they are grossly excessive, and indicate passion and prejudice on the part of the jury.

The first objection presents a question which is new to the courts of this state, and we have not been cited to, nor are we able to find many cases in which the question seems to have been considered. Appellant insists that exemplary damages are not compensatory and, therefore, not property, and that, although under the statute, causes of action survive, yet the representative of a deceased person cannot recover them; and he cites, in support of his contention, *Sheik v. Hobson*, 64 Iowa, 146 (19 N. W. Rep. 875). That the general rule, both at common law and under the statute, is as claimed, must be conceded. 7 Am. & Eng. Enc. Law, 477; *Dwyer v. Railroad Co.*, 84 Iowa, 479 (51 N. W. Rep. 244); *Rose v. Railway Co.*, 39 Iowa, 246. But it must be borne in mind that, where the action is brought by a representative of one deceased, it is to repair the injury done to the estate, and the damages are assessed with reference thereto. Consequently, pain and suffering are not taken into account. Neither can exemplary or punitive damages be awarded, as a general rule, for they are peculiar to the person, and do not relate to pecuniary or property rights. And, notwithstanding all causes of action now survive, and may be brought despite the death of the person entitled to the same (Code, section 2525), yet, in assessing the damages, we must look to the

wrong to be remedied, and the injury to be repaired. When the action is brought by the representative of one deceased, it is to right the wrong done to his estate, and to take from the defendant that which will make the estate whole. But when the action, as in this case, is brought by the person injured, who dies during the pendency of the action, the law attempts to remedy the wrong done to him, and not necessarily to his estate; and the damages in such case are not only compensatory, but may include exemplary as well. The statute to which we have just referred has reference to the *cause of action*, and not to the rule of damages to be applied. This exception to the general rule—If, indeed, it can properly be said to be an exception— has been recognized by this court in several cases which we have heretofore had occasion to consider. In the case of *Muldowney v. Railway Co.*, 36 Iowa, 468, which was an action commenced by one Laughlin, who afterwards died, and his administratrix was substituted, we said: "His administratrix succeeded to the cause of action as it existed at the time of his death, and can it seems to us, recover just such damages as he would have been entitled to if he had survived. A different rule would obtain if the action had been commenced after his death for the benefit of the estate. *Donaldson v. Railway Co.*, 18 Iowa, 280. In this case the administratrix is substituted as plaintiff, and claims the damages which Laughlin, the deceased, sustained in consequence of the injury." This same distinction is also recognized in *Dwyer v. Railroad Co.*, *supra*. See, also, *Railroad Co. v. Barron*, 5 Wallace 90. The question presented finally resolves itself into an inquiry as to the measure of damages rather than to the survival of actions; and, as thus narrowed, it is not difficult of solution, for it is conceded that, if defendant had lived to see the end of the trial,

he would have been entitled to recover exemplary damages, if the jury saw fit to award them. The case of *Sheik v. Hobson*, relied upon by appellant, was decided upon different principles. It was there said that the punitory power of the law ceased when the defendant dies, and that the civil law never inflicts vicarious punishment. Such a rule has no possible application to this case, unless the rule is to be applied both ways. We do not think, however, that it should be so applied, for reasons which are so apparent as to need no further elaboration.

With reference to the second point made against the assessment of exemplary damages, that advice of counsel was a complete defense, we find that the jury made an answer to interrogatory No. 3, submitted to them, which destroys the force of appellant's argument; and, unless it appears that this finding is without support in the evidence, there can be no reversal of the case on this ground. We have gone over the evidence relating to this matter, and conclude that the finding of the jury to which we have referred has sufficient support in the evidence, and that we cannot interfere. Again, it is insisted, in this connection, that there is no evidence from which the jury could rightfully find that the attachment was maliciously sued out. We cannot agree with counsel in this conclusion. There was evidence from which the jury were justified in finding malice, and while we might not reach this conclusion, had we to try the case anew, yet we cannot interfere with the verdict on this ground.

The third objection to the allowance of exemplary damages is that they are and were excessive, and out of all comparison with the actual damages assessed. Now, while they are, no doubt, large, yet, as the matter of allowing such damages and the amount thereof rests peculiarly with the jury, we do not think we

ought to interfere, except in extreme cases. The facts in this case are peculiar. The jury were justified in finding that Seuffert was induced by plaintiff, who had every confidence in his honesty, integrity, and solvency, to purchase goods of the corporation. After dealing with him for many years, they hear that he is sick nigh unto death, and they go to Des Moines county to ascertain as to whether there was any change in his financial condition. They find him confined to his bed, unable to transact business, or to consult with any one with reference to it. By threats of legal process and intimidation, they try to induce his wife and daughter to turn over some of his property. Failing in this, they sue out a writ of attachment, alleging that defendant was about to convert his property, or a part thereof, into money, for the purpose of placing it beyond the reach of his creditors. The jury were justified in finding that there was no truth whatever in this allegation, but that the real reason for the attachment was that plaintiff was afraid Seuffert would die, and his property would go into the hands of an administrator, and they would have to wait a year for their money, which they did not wish to do. It is also in evidence that the attorney representing the plaintiff, said to Miss Seuffert that, if she did not have the property "signed over to plaintiff," they would take everything, close up the business, attach everything on the farm, and go right up from here and sell it; that they would go to trial and her father could not stand "to be lawed"; that plaintiff was a rich company; that McElhinney, the president, was worth a million, and they would take it from court to court, and tie up everything the father had got, and it wouldn't hurt the mill company a particle." There was also much other evidence, tending to show, a purpose to injure, annoy, harrass, and vex the defendant

to induce him to secure the plaintiff's claim. The exemplary damages were not out of proportion to the actual damages allowed by the jury; and, as said in case of *Saunders v. Mullen*, 66 Iowa, 728 (24 N. W. Rep. 529): "A court, and especially an appellate tribunal, should not interfere in such cases, unless the conclusion is irresistible that the amount allowed is so great as to evince prejudice on the part of the jury." If the facts are, as claimed by appellant, a great wrong was done the deceased by the suing out of the writ of attachment in this case. There was not the least possible excuse for it, except a desire on the part of the plaintiff to secure their claim before Sueffert should die, and his estate pass into the hands of an administrator, to be administered upon by the somewhat slow process of law. The jury were justified in finding that plaintiff attempted, by dishonorable means, to induce the daughter of the deceased to, in some manner, secure their claim. There is little, if any proof, that the facts stated as grounds for the attachment, were true, or that the plaintiffs had any reason to believe them to be true. They knew that Sueffert was on a sick bed, unable to transact any kind of business, and were led to believe that he would never recover. In view of all this, they sought the strong arm of the law, and the extraordinary process of the courts, for the sole purpose of securing their claim before the property of their debtor should pass into the hands of an administrator. We cannot, in view of these circumstances, interfere with the allowance made by the jury for exemplary damages.

VI. It is argued that the court erroneously permitted the defendant to give in evidence the plaintiff's wealth. The argument is based upon a false premise. No such evidence was introduced. True it is that defendant was permitted to give in evidence a statement

made by plaintiff's attorney to Miss Seuffert as to the plaintiff's wealth, made at a time when he was trying to induce her, as the representative of her father, to secure the claim. This evidence was clearly admissible. But, if it were not, plaintiff cannot complain, for it was not properly objected to at the time of the trial.

VII.   Several errors are assigned on the admission and rejection of testimony. The points made are not of sufficient importance to be specifically referred to in this opinion. It is sufficient to say that we have examined all which counsel have seen fit to argue, and find no error. Many of the matters objected to are explanatory, and all or nearly all related to collateral matters of so little moment in the case as not to require serious consideration.

VIII.   Another assignment of error is that the verdict is contrary to law, and is not sustained by the evidence. In view of what has been said in the former part of this opinion, it is apparent that the case is one which was properly submitted to the jury for them to determine. This was done under proper instructions from the court, and the result we cannot disturb.

IX.   After the verdict was returned, defendant filed a motion asking the court to tax attorney's fees for defendant as part of the costs. This motion was supported by evidence adduced upon the hearing, and the court allowed the sum of one thousand two hundred dollars as attorney's fees for defendant's attorneys. It is claimed that this was error. The amount to be allowed for such services was a question for the court to determine, and, in the light of the evidence adduced, we cannot say that his conclusion was erroneous. Plaintiff's claim was admitted, and the whole defense tended to show the wrongful issuance of the attachment. The case falls

squarely within the rule announced in the cases of *Whitney v. Brownewell*, 71 Iowa, 254 (32 N. W. Rep. 285); *Lyman v. Lauderbaugh*, 75 Iowa, 481 (39 N. W. Rep. 812); *Mercantile Co. v. Chandler*, 90 Iowa, 650 (57 N. W. Rep. 595); *Porter v. Knight*, 63 Iowa, 365 (19 N. W. Rep. 282). The exceptions to the evidence adduced in support of the motion are not well taken, for the reasons just suggested. On account of the size of the verdict we have examined this case with more than usual care, and are constrained to say that the record is exceptionally free from error. The trial court seems to have exercised unusual care in submitting the case to the jury, and the verdict, while large, and no doubt something of a hardship upon appellant, has such support in the evidence that we cannot, in view of the settled rules of law, disturb it. The judgment is therefore AFFIRMED.