AURIA STRAIGHT, Administratrix, Appellant, v. AMERICAN LIFE INSURANCE COMPANY, Appellee.

INSURANCE: The Contract in General—Issuance. The prepara-
1 tion of a policy of insurance, blank as to date and signature,

and held by the insurer pending an investigation of the application, does not constitute the *issuance* of a policy.

EVIDENCE: Presumptions—Destruction of Evidence. The burden
2   of proof to show the due execution of an instrument is not met
by evidence that the one alleged to have executed it had in his
possession an instrument of the nature alleged, and voluntarily
destroyed it. So held as to an insurance policy.

EVIDENCE: Presumptions—Must Yield to Positive Testimony.
3   Principle recognized that presumptions must yield to positive
and unimpeached testimony to the contrary.

*Appeal from Polk District Court.*—LAWRENCE DEGRAFF, Judge.

JUNE 24, 1918.

REHEARING DENIED SEPTEMBER 20, 1918.

ACTION at law to recover upon an alleged contract of life insurance. There was a directed verdict and judgment for the defendant, and plaintiff appeals.—*Affirmed.*

*Keithley & Bump,* for appellant.

*E. B. Evans* and *Halloran & Starkey,* for appellee.

WEAVER, J.—On the 21st day of January, 1915, Willis A. Straight, living at the town of Auburn, in Sac County, Iowa, made application to the defendant company, through one of its agents, for a policy of life insurance in the sum of $10,000, and made advance payment, in cash and note, of the first year's premium. On January 31, 1915, ten days after the date of the application, and before any policy had been delivered to him, Straight died. This action is brought to recover the amount of the contemplated insurance. The petition alleges, first, that the policy was issued and became a valid and binding contract, but the instrument itself had not been delivered into the hands of the insured. Stating plaintiff's case in another count, it is

1. INSURANCE:
   the contract
   in general:
   issuance.

alleged that, the application having been made, it became
the duty of the company to act thereon with reasonable
promptness, but it negligently and unreasonably failed so to
do; that, had the company and their officers performed their
duty in this respect, the policy would have been issued and
delivered in the lifetime of the applicant, and the contract
of insurance would have been complete, or, if rejected, he
would have had opportunity to obtain equivalent insurance
elsewhere.   The defendant, answering the claim made by the
plaintiff, admits the making of the application of insurance
by the deceased, and that he paid or tendered with his ap-
plication cash and note for the amount of the premium, but
alleges that such application was never accepted or ap-
proved, but that the same was rejected, on February 5, 1915.
For a further answer, it is alleged that, as a part of his ap-
plication for insurance, Straight submitted to a medical ex-
amination, in the course of which he was asked, "Have you
ever been examined for insurance without receiving a pol-
icy?" and to said inquiry, he answered, "No."   This state-
ment, defendant alleges, though warranted by the applicant
to be true, was false; for that said Straight on July 13,
1914, did make application for insurance to the Central Life
Assurance Society of the United States, which company re-
jected the application and declined to issue a policy thereon.
In another count, a similar defense is pleaded, charging that
said answer by the applicant was also false; for that, on or
about the month of July, 1914, Straight made application
for life insurance to the Prairie Life Insurance Company of
Omaha, which application was also rejected, and no policy
was issued thereon; and that, because of such false repre-
sentation and warranty, plaintiff is not entitled to recover.

At the close of the testimony for the respective parties,
the court sustained the defendant's motion for a directed ver-
dict, because of the insufficiency of the evidence to sustain a
finding in plaintiff's favor.

In argument to this court, appellant does not claim to have made a case for the jury on the ground of defendant's negligence in passing upon the application, but rests her demand for a reversal upon the ground that the issuance of a policy is conceded, or that the evidence of its issuance is such as to carry that question to the jury. If this point is ruled against the appellant, as we think it must be, other questions raised and argued in the briefs become immaterial, and may be passed without discussion.

Counsel assert and reiterate that defendant or its officers and agents, as witnesses on the trial, admit that a policy was issued. But this is a mistake. One of the expressed conditions of the application is that the company shall incur no liability thereunder, "until it has been received, approved, the policy issued thereon by the company at the home office, and the premium has actually been paid to and accepted by the company or its authorized agents during my lifetime in good health." Now, whether the word "issued," as here employed, is held to mean the sending out or delivery of the duly executed instrument to the insured, or to someone for his use, or whether we say it is issued, within the meaning of the application, whenever it is executed and completed, ready for delivery, it must be said that the plaintiff has failed to produce any testimony pointing to either conclusion. True, it is not denied that the application was made, nor that payment of the premium was received by the company conditionally upon its return to the applicant if no policy was issued. It is also conceded that the applicant submitted to the usual local medical examiners, and it may be inferred that their report thereon was favorable to the risk. There is no dispute that the papers were received by the company on January 25, 1915, and that, four days later, January 29, 1915, Straight became very sick, and died on January 31, 1915. There is no scintilla of evidence that any policy was ever sent to Straight or to any other per-

son for him.  The officers and agents of the company unite in testifying that the application had not been passed upon or approved, but was still under investigation when they received the news of Straight's death.  The testimony on which it is argued that a policy was, in fact, issued, or at least that it was made and executed, is as follows:  Defendant's witnesses, or some of them, testify that the agent taking the application was urgent in asking that action be had thereon promptly, and that, to facilitate it, the policy writer or clerk prepared what they call a "skeleton policy," which was placed or filed with the other papers in the case, and destroyed when the application was finally rejected. They explain or describe the so-called skeleton policy as being a form filled out and ready for execution, but left without date or signatures until the application should finally be approved.  It also appears that, immediately below the body of the application, there were stamped the words, "Issued .................. Payable ............."

There is also in evidence a book or record kept by the company, in which was entered a list of applications received, and other memoranda relating to each, with a final column, in which, when an application was approved, an entry of the date was made, or if not approved, there was written or penciled the word "rejected." This record shows the entry of Straight's application, and in the final column are the words, "Rej. Feb. 5, 1915." This entry is quite apparently written over an erasure of some other entry. The matter erased is not now decipherable, and the change, whatever it was, is not explained.  The defendant shows, without contradiction, that, when the application was received, the matter of investigating the risk was referred to a firm which makes a specialty of such business for insurance companies, and that final action by the company was delayed for a report of such investigation.  It also fairly appears that the report of the medical examination of the applicant

was, in due course, passed over to Dr. Kelleher, who was then the medical director of the company. It happened, however, that, at this same time, January 26, 1915, a medical board was organized, and succeeded to these duties, and Dr. Kelleher passed this application, among others, to said board. The members of this board testify, without contradiction, to receiving the application, and that it had not been approved at the time information was received of the death of Straight; the delay, if we understand the record, being occasioned in waiting for receipt of a report of the investigation to which we have referred.

Plaintiff having sued upon a policy of insurance the existence and issuance of which are denied, the burden was upon her to make at least a prima-facie showing of the truth of her averment. No witness undertakes to 2. EVIDENCE: presumptions: destruction of evidence. say, directly or indirectly, that a policy was ever executed, or, indeed, that the application was ever accepted or approved. Appellants say, however, that, as certain unexplained erasures appear in the defendant's records, and as defendant admits the destruction of the "skeleton policy," a presumption arises that the evidence thus made unobtainable would, if it had been preserved, sustain the claim made by her. The rule so invoked is one of ancient origin, and is undoubtedly sound whenever the facts call for its application, but we think no precedent goes to the extent here claimed for it. The presumption which the law recognizes will not relieve the plaintiff from making a prima-facie case by evidence independent of the presumption. That is, the plaintiff must offer some degree of proof that the policy on which she sues was, in fact, issued, within the meaning of the application; and if this be denied, then, doubtless, the voluntary destruction of the paper by the defendant would afford ground for a presumption that, if it had been preserved and produced on the trial, the evidence would have been un-

favorable to the defense. In other words, the chief office or value of such evidence is corroborative, and not independent or substantive. Stated still otherwise, proof or admission that defendant destroyed a paper, or a form of policy, without anything more, would not tend to show nor give rise to any presumption that such paper was a duly executed insurance policy or contract. *Gage v. Parmelee*, 87 Ill. 329; *Stout v. Sands*, 56 W. Va. 663; 2 Wharton on Evidence (3d Ed.), Section 1268; *Patch v. Protection Lodge*, 77 Vt. 294, 329; *Whitney v. Robbins*, 17 N. J. Eq. 360, 366. Nor is this presumption any exception to the general rule that mere presumptions or inferences of fact will not be allowed to prevail against the clear, unequivocal, and undisputed testimony of unimpeached witnesses, testifying of their own knowledge to the material facts.

**3. EVIDENCE: presumptions: must yield to positive testimony.**

Tested by these rules, it must be said that plaintiff failed to make a case for the jury, and the trial court rightly directed a verdict for the defendant.—*Affirmed.*

PRESTON, C. J., LADD and EVANS, JJ., concur.