ROY GREGORY, Appellee, v. OLIVER SORENSON, Appellant.

No. 40973.

APRIL 5, 1932.

REHEARING DENIED SEPTEMBER 30, 1932.

Smith & More and Bennett Cullison, for appellant.

E. M. Miller, for appellee.

KINDIG, J.—The plaintiff-appellee, Roy Gregory, conducted a florist business in Harlan. He raised flowers, plants, and bulbs in, and sold them from, a greenhouse. During the same period of time the defendant-appellant, in competition with the appellee, was engaged in the retail sale of flowers in Harlan.

On April 8, 1924, someone wrongfully entered appellee's

greenhouse and destroyed flowers, plants, and bulbs. Soon thereafter the appellant was accused of having entered the greenhouse and maliciously destroyed appellee's property. Accordingly, he was arrested and later indicted for the malicious destruction of the greenhouse property, or some similar offense in connection therewith. In the first trial under the indictment, the jury disagreed, and on the second trial the next jury returned a verdict of not guilty. Then, on November 21, 1926, this action was commenced by appellee to obtain compensatory and exemplary damages from the appellant for his alleged wrongful destruction of the aforesaid flowers, bulbs, and plants. A trial was had in the civil case. Appellee obtained a judgment against appellant in that case for the sum of $4,905, allocated as follows: $1,405 compensatory and $3,500 punitive damages. An appeal was taken from that judgment by the appellant, which resulted in a reversal because of an erroneous instruction on an alleged "alibi." See Gregory v. Sorensen, 208 Iowa 174.

Following that reversal, the case was again tried in the district court, which resulted in a verdict of $2,500 in appellee's favor. That verdict is allocated as follows: $1,135 compensatory, and $1,365 exemplary damages. Again the appellant appeals. The grounds upon which a reversal is asked are set forth under the following discussion.

I. At the outset, it is claimed by appellant that the evidence is not sufficient to identify him as the one who destroyed the flowers, bulbs, and plants. A motion for a directed verdict on this theory was timely and properly made by the appellant. This motion, however, was overruled by the district court. Hence appellant asks for a reversal on this ground.

All the evidence relied upon by the appellee to identify the appellant as the one who destroyed the property is circumstantial as distinguished from direct. Nevertheless, we are constrained to hold that the evidence is sufficient to present a jury question upon this proposition, and therefore the appellant's motion for a directed verdict was properly overruled. Careful consideration has been given to appellant's argument at this juncture and the record has been fully read with reference thereto. When appellant's conduct and statements are considered before the property was destroyed, and immediately thereafter, together with the other facts and circumstances in the case, there is pre-

sented ample evidence upon which the jury might base its verdict. Included in our consideration in that respect is the location of a Ford automobile with reference to the greenhouse, the fact that the appellant owned a Ford car of the type under consideration, the footprints from or near the Ford car to the greenhouse and back again, the movement of the Ford automobile late at night without lights into appellant's garage, and many other facts and circumstances.

While submitting this question to the jury, the district court carefully instructed them upon the use of circumstantial evidence. There is no basis in the instructions for the criticism directed at them in the appellant's argument.

"Verdicts may not be based on mere surmise or conjecture. The circumstantial evidence must be something more than consistent with appellant's theory * * *. It must exclude every other reasonable hypothesis." Field v. Southern Surety Co. of New York, 211 Iowa 1239.

Such was the theory presented to the jury by the district court in the case at bar. Nowhere does appellant suggest any other theory consistent with the circumstantial evidence presented here. As a matter of fact, the circumstantial evidence offered to the jury in this case excludes any theory except that which points out the appellant as the destroyer of appellee's property.

Under the holdings of this court, circumstantial evidence, in order to be sufficient, must be of such a nature and the facts included therein "so related to each other that" the theory of recovery " is the only conclusion that can fairly or reasonably be drawn from" such facts and circumstances. "It is not sufficient that" the circumstantial evidence "may be consistent merely with" the theory of recovery "for that may be true, and yet" the facts and circumstances "may have no tendency to prove the theory. This is tantamount to saying the evidence must be such as in the nature of the case will convince an ordinarily reasonable person" that the appellant destroyed the appellee's property in the case at bar. "If another" theory "inconsistent with the cause alleged is equally probable, the former can not be said to have been proven." Johnson v. Corn Products Refining Company, 157 Iowa 420. On the same proposition, see also Brown-

field v. Chicago, R. I. & P. Ry. Co., 107 Iowa 254; Bryce v. Chicago, Milwaukee & St. Paul Railway Co., 129 Iowa 342; Hemminger v. City of Des Moines, 199 Iowa 1302; Neal v. Chicago, R. I. & P. Ry. Co., 129 Iowa 5; Asbach v. Chicago, B. & Q. Ry. Co., 74 Iowa 248; Tibbitts v. Mason City & Fort Dodge Railway Co., 138 Iowa 178.

Consequently, the circumstantial evidence in this record meets all the tests required by the law, and the district court properly submitted that issue to the jury.

II. Regardless of the foregoing, it is said by the appellant that the judgment of the district court must be reversed because that tribunal wrongfully admitted the testimony of the witness Mrs. Beems concerning conversations with a Mrs. Case and the appellant. The part of this conversation which was with Mrs. Case alone is said by the appellant to be hearsay and inadmissible.

This evidence of Mrs. Beems' consisted of her relating statements and actions of Mrs. Case's to induce the former not to testify against appellant, but return from Harlan, Iowa, to Denver, Colorado, where the witness lived. During her testimony, Mrs. Beems related that the appellant and Mrs. Case offered her money if she would not testify. It is said by the witness that the money offered by Mrs. Case and the appellant was supposedly to pay the former's railroad fare from Harlan to Denver. Some of the conversation thus related by the witness took place in the appellant's absence. Therefore, it is said that such portion of the testimony amounted to mere hearsay. Obviously, however, this conclusion is not supported in the record. Mrs. Case induced Mrs. Beems to leave the house and go to the street where the appellant was waiting with his automobile. When Mrs. Beems arrived at the automobile, the appellant spoke to her, as did Mrs. Case, about going back to Denver. At the same time, the appellant offered to pay Mrs. Beems' railroad fare, and gave Mrs. Case money with which to pay her. Clearly, the conversations between the witness and Mrs. Case were so closely related with the actual transaction with appellant in the automobile that the jury could conclude, if they were so inclined, that Mrs. Case was the appellant's agent in the illegal transaction.

Moreover, assuming that some of the conversation between the witness and Mrs. Case took place immediately before the

automobile incident, nevertheless there is sufficient evidence in the record upon which the jury could find that the appellant, after the women came to the automobile, fully ratified the previous statements made by, and actions of, Mrs. Case. See Long v. Osborn, 91 Iowa 160; Eadie, Guilford & Co. v. Ashbaugh, 44 Iowa 519.

There was evidence in the record supporting the fact that Mrs. Case and the appellant had entered into a conspiracy to illegally induce the witness Mrs. Beems not to testify against appellant in this case. These statements and actions of Mrs. Case's occurred: First, during the furtherance of the unlawful plan; and, second, during the continuance thereof. Consequently, under all the circumstances, the evidence was properly admissible. See State v. Archibald, 204 Iowa 406, 409.

The district court carefully limited the use to be made of this testimony by the jury. It was said in the instructions that the testimony should not be considered unless Mrs. Case was the agent of the appellant or unless appellant ratified her actions and statements after they were committed or made. Under the limitations named in these instructions, the evidence was clearly admissible.

III. But even though that is true, appellant further contends that there should be a reversal because of the district court's instruction to the jury regarding the use of the aforesaid evidence.

Two complaints are here made. First, the complaint is that the evidence was not sufficient to indicate that the appellant attempted to bribe the witness Mrs. Beems. That issue was presented to the jury in the court's instructions. Hence the appellant complains.

Without here setting forth all the evidence relating to the fact that the appellant did attempt to bribe the witness, it is sufficient to say that the record discloses enough testimony to warrant the court in submitting the issue to the jury. Therefore, there is no merit in appellant's first contention in this regard.

In the second place, the appellant objects because the district court told the jury that if they found the appellant did attempt to bribe the aforesaid witness, such fact would indicate an admission on his part that his cause "was unjust." So, the

1380

appellant declares, error was thereby committed. A review of the authorities in point will indicate that the appellant's contention is without merit. Evidence of attempts to bribe witnesses "is in the nature of an admission that the cause of the party resorting to bribery of witnesses * * * is unjust, and that his claim is dishonest and unrighteous." Kidd v. Ward, 91 Iowa 371. To the same effect are the following cases: Harrison v. Harrison, 124 Iowa 525; State v. Ancheta, 145 Pac. 1086 (N. Mex.); State v. Constantine, 93 Pac. 317 (Washington); McHugh v. McHugh, 40 A. 410 (Pa.). See also Meyer v. Gotsdiner, 208 Iowa 677, local citation, 681; State v. Smith, 207 Iowa 1345, local citation, 1350; Cruikshank v. Gorden, 23 N. E. 457 (N. Y.); Carpenter v. Willey, 26 A. 488 (Vt.); 22 Corpus Juris, 110; 10 Ruling Case Law, 885.

While it is true, as said in Straight v. American Life Insurance Co., 184 Iowa 301, that such evidence is generally corroborative only, as distinguished from substantive, yet the same is admissible for that purpose, and when admitted has the force of the admission indicated in Kidd v. Ward (91 Iowa 371), supra, and Harrison v. Harrison, Executrix (124 Iowa 525), supra.

▉ IV. Furthermore, it is argued by the appellant that the district court wrongfully told the fact-finding body that the attempt to persuade the witness Mrs. Beems not to testify even without bribery is an admission that he deemed the evidence she might give unfavorable to him. Concerning this proposition the district court said to the jury:

"An attempt to keep an adverse witness from testifying is not necessarily an admission that the party making such attempt has a false or unjust claim or defense, *but it is in effect an admission that he deems the evidence which he seeks to suppress unfavorable to his cause.* (The italics are ours)."

Clearly the district court pointed out to the jury the distinction between an attempt to bribe the witness and the mere endeavor to keep the witness from testifying. This instruction is supported under the rule announced in the cases on the general subject above cited. We said in Harrison v. Harrison (124 Iowa 525), supra, reading on page 526:

"The rule is that the suppression of evidence is an admission that it is deemed unfavorable to the party suppressing it."

In that case we refused to apply the rule that the attempt to persuade a witness not to testify indicated that the party so attempting was making an unjust or false claim. The refusal, however, to extend the rule otherwise applicable to cases where the party attempts to bribe, to the situation where he merely attempts to persuade a witness, is not a declaration in effect that the effort to persuade the witness is not a material incident to be considered with the other facts and circumstances in the evidence.

Why would a party in any case wrongfully seek to persuade a witness not to testify? Manifestly, it would be because he deemed the testimony which the witness might give unfavorable to him. Otherwise, there would be no reason for such party to persuade the witness not to testify. Obviously, then, the district court in the case at bar correctly instructed the jury, and the instruction is fully sustained by the many authorities above cited.

V. Complaint is also made by the appellant because the district court permitted the appellee to introduce evidence concerning footprints from and near the location of the aforesaid Ford Car to the greenhouse and back again.

Underlying appellant's objection to this evidence is the thought that the footprints were not properly identified as those of the appellant. Reliance is here made by appellant upon the doctrine announced in State v. Burch, 195 Iowa 427. There it is said, reading on page 435:

"The general rule is that the character of footprints found where the crime is discovered, leading to or from the place of the crime, and their correspondence with the feet of the accused, or with shoes worn by him or found in his possession, are admissible in evidence to identify him as the guilty person; but mere evidence of footprints alone, unconnected with the defendant by means of comparison or otherwise, is not admissible."

That part of the pronouncement, however, relied upon by appellant has no application to the facts in this case, because here there is an abundance of other evidence connecting the appellant with the footprints. Under such circumstance the testimony relating to the footprints was admissible. Quoting again

from State v. Burch (195 Iowa 427), supra, the following language is found on pages 434-5:

"That evidence of tracks or footprints, if properly connected, is admissible, there is no doubt. State v. Norman, 135 Iowa 483. In that case, there was evidence that tracks were found on the day following the crime, near the scene of it, and corresponding tracks in front of a neighbor's premises. There was other evidence tending to connect defendant with the crime by tracing him by tracks of a spring wagon, and so on. Under the circumstances of that case, it was held that the evidence was admissible."

In the case at bar, the footprints were found immediately after the property had been destroyed in the greenhouse. According to the testimony, the destruction of the flowers, bulbs, and plants in the greenhouse took place after midnight, and the tracks were discovered early that morning. Moreover, the tracks are connected with the appellant throughout the entire record. As previously stated, the footprints led from the greenhouse to or near the Ford car. This car, as before said, is traced in its travels from that location in the dark where it is operated without lights into the appellant's garage. Such circumstance, together with all the other facts and circumstances, sufficiently connect the appellant with the footprints. Hence, the district court did not err in permitting testimony concerning the footprints.

VI. Objection is next made because the district court permitted the appellee to introduce in evidence an advertisement in the Harlan Tribune, a paper published in Harlan. This advertisement was published under the direction of the appellant, and is as follows:

"Special. Friday and Saturday. Sweet Peas, 50c per bunch. Long stems and large blooms. Orange, Lavender, purple, red, pink, and blue. We also have a complete stock of high grade flowers to select from. We have one hour service with the largest growers of high grade flowers west of the Mississippi River. We positively do not handle cheap flowers by amateurs, irresponsible and insolvent growers. The only flower shop in Shelby County. The only member of the Florists Telegraph De-

livery System. The Harlan Floral Shop, Oliver Sorenson (appellant), proprietor."

The objection to the introduction of this advertisement appears to be based upon the theory that: First, there is nothing therein that in "any way throws light upon the issues to be determined in this case"; and, second, the advertisement indicates only the legitimate rivalry in business between the appellant and the appellee.

Manifestly, however, the advertisement had a material bearing on the case. Some of its language indicates more than a mere friendly rivalry between appellant and appellee. Of course, the advertisement must be considered with all the other facts and circumstances in the case. When that is done, its materiality becomes self-evident. There were only two florists operating in Harlan at the time. These were appellant and appellee. Appellee raised the flowers he sold. Appellant purchased his flowers elsewhere. The advertisement was published a very short time before the flowers, plants, and bulbs were destroyed. When appellant refers in the advertisement to amateurs, irresponsible and insolvent growers, reference, according to the record, is made to appellee. On April 8, 1924, immediately before the greenhouse property was destroyed, appellant asked a neighbor, who was a creditor of appellee's, to sue the latter. There was no apparent reason why the appellant desired this neighbor to thus sue the appellee except that he wanted to annoy his competitor. At the same time, appellant suggested that he would buy the judgment when it was obtained. Thereby the appellant left the inference, according to the record, that when he became the owner of such judgment, he would issue execution upon appellee's greenhouse. Obviously the appellant was endeavoring to put appellee out of business.

After considering all the facts in the record, including those herein recited and others omitted, it is apparent that the advertisement indicated that appellant, who is its author, had a feeling of malice toward the appellee. For that reason, then, the advertisement was relevant and material. No error appears, then, because the district court admitted this advertisement into the evidence.

VII. Furthermore, it is said that the district court erred

in admitting evidence concerning a piece of lath. This piece of lath was found in the bluegrass sod west of the greenhouse near the course of the aforesaid footprints. The lath was similar to other laths contained in a pile near the greenhouse. Those laths apparently were used to support carnation flowers. Perhaps the lath had little materiality. It did show, however, some of the surrounding circumstances in connection with the case. There is some indication that the person who made the footprints above described may have carried the lath from the greenhouse to near the point where he entered the car which was standing at the place previously suggested.

While, as before stated, the incident concerning the lath may not be greatly material, yet the introduction of the evidence concerning it furnishes the appellant no real basis for complaint.

VIII. Continuing his objections to the rulings of the district court, the appellant complains about the damages. That objection divides itself into three parts: First, it is asserted that the actual damages are excessive; second, it is claimed that the exemplary damages are excessive; and, third, it is contended that the district court improperly instructed the jury concerning the purpose of exemplary damages. These propositions now will be considered in the order named.

First: Are the actual damages excessive? Obviously not. The amount of those damages returned by the jury was $1,135. This amount of actual damages is fully sustained by the evidence. There is no indication of passion or prejudice on the jury's part in fixing the amount of these damages. Consequently the appellant has no just grounds for complaint at this point.

Second: Are the exemplary damages excessive? Plainly not, when all the facts and circumstances are considered. The existence of malice on appellant's part has been fully supported by the record. Union Mill Co. v. Prenzler, 100 Iowa 540; International Harvester Co. of America v. Iowa Hardware Co., 146 Iowa 172; Welsh v. Haleen, 157 Iowa 647. Actual damages, as above stated, were allowed by the jury. Morrow v. Scoville, 206 Iowa 1134. Resultantly there is a basis for exemplary damages.

"Under our rule, it is peculiarly the province of the jury to say whether or not exemplary damages shall be allowed, and if so, how much." Morrow v. Scoville (206 Iowa 1134), supra.

See, also, Brause v. Brause, 190 Iowa 329; Stricklen v. Pearson Construction Co., 185 Iowa 95; Union Mill Co. v. Prenzler (100 Iowa 540), supra; Saunders v. Mullen, 66 Iowa 728; Harvester Co. v. Hardware Co. (146 Iowa 172), supra; Soesbe v. Lines, 180 Iowa 943; Welsh v. Haleen (157 Iowa 647), supra; Reutkemeier v. Nolte, 179 Iowa 342.

Although the jury is to fix the amount of exemplary damages, there is, of course, a limit beyond which that body may not go.

"We have said many times that the assessment of damages, both actual and exemplary, is peculiarly within the discretion of the jury. It is true, of course, as said in some of the cases, that this discretion is not unlimited. The test is, not what amount the court would have allowed, but whether the verdict is so large or small, as the case may be, as to shock the conscience." Brause v. Brause (190 Iowa 329), supra.

Again it is said in the Brause case, supra, reading on page 339:

"The rule of our cases is that, even though the verdict is large, we will not interfere, unless the verdict appears clearly to be the result of passion and prejudice."

Tested by these rules, it is apparent that the exemplary damages in the case at bar are not so excessive that this court will be justified in setting the verdict aside. In many of the cases above cited, the amount of exemplary damages allowed was larger and in greater proportion to the actual damages. See Brause v. Brause (190 Iowa 329), supra; Union Mill Co. v. Prenzler (100 Iowa 540), supra. The rule of the above authorities justifying the amount of the exemplary damages in the case at bar clearly can be distinguished from the principle applied in Soesbe v. Lines (180 Iowa 943), supra, cited by appellant. There the amount of exemplary damages returned by the jury was out of all proportion with the actual damages allowed. Here, in the case at bar, the proportion existing between the actual damages and exemplary damages allowed by the jury is entirely reasonable.

Third: It is urged by the appellant that the district court erroneously stated to the jury the purpose of exemplary

damages. Under Instruction Twelve that court explained to the jury the purpose of exemplary damages. This purpose, as thus stated by the trial court, is twofold. According to the instruction: First, the purpose is to punish the defendant and prevent him from committing similar offenses in the future; and, second, the purpose is to increase the appellee's award because the injury to him was exaggerated, wanton, and reckless. Appellant's objection to the instrument relates to that phase thereof which indicates the purpose of exemplary damages is to punish. Consequently no consideration is given by us to any other part of the instruction.

That part of the instruction relating to punishment as a purpose of exemplary damages, the appellant declares is erroneous. As a basis for this declaration the appellant relies upon an excerpt found in Brause v. Brause (190 Iowa 329), supra, reading on page 342. There the language is:

"Exemplary damages according to the ordinary acceptance of the term, are damages imposed by way of punishment; but they are otherwise described as 'added,' 'punitive,' 'imaginary,' and so on. However, the idea of punishment does not, according to all authorities, enter into the definition of exemplary damages, but the term is employed to mean an increased award, in view of supposed aggravation of the injury to the feelings of plaintiff by the wanton or reckless act of defendant."

Therefore, the appellant argues that this court has eliminated from the purpose of punitive damages the idea of punishment. Manifestly, however, the appellant is in error. Investigation will disclose that the excerpt above quoted from Brause v. Brause (190 Iowa 329), supra, may be found verbatim in 17 Corpus Juris, page 712, in section 18. In the case of Brause v. Brause, supra, the point now under consideration was not before this court. Apparently the real question under consideration in the Brause case related to the excessiveness of the verdict. Contained within the quoted excerpt is a general statement of the law in the various jurisdictions, rather than a statement of it upon the particular subject in this jurisdiction. This court for a number of years has consistently held that the idea of punishment and the prevention of similar future offenses is contained in the purpose of exemplary damages. Parkhurst v.

Masteller, 57 Iowa 474; Constantine v. Grupe Co., 147 Iowa 142; White v. International Text Book Co., 164 Iowa 693; Morgan v. Muench, 181 Iowa 719; Stricklen v. Pearson Construction Co. (185 Iowa 95), supra. See Boom v. Boom, 206 Iowa 70, local citation, 74. A few quotations from some of the above cited cases will illustrate the thought. During the discussion in Parkhurst v. Masteller (57 Iowa 474), supra, reading on page 481, it is said:

"* * * the doctrine of exemplary damages has always been recognized by this court, and it is too late to overturn it now. In addition, therefore, to damages for injury to the feelings there may be allowed in a proper case damages *strictly by way of punishment.*" (The italics are ours).

Again in Constantine v. Grupe Co. (147 Iowa 142), supra, reading on page 148, this court declared:

"Exemplary damages are not compensatory in the ordinary sense. Such damages are *usually given as a punishment to the offender, for the benefit of the public, and to prevent similar acts.*" (The italics are ours).

Likewise, we stated in Morgan v. Muench (181 Iowa 719), supra, on page 730:

"It has been held in many cases that aggravated damages, whether compensatory or a special loss suffered by plaintiff, or *as a punishment to defendant, are allowable* in a breach of promise case." (The italics are ours).

Clearly, therefore, under the many cases above cited, the district court was fully justified in giving the instruction of which complaint is made. There is no objection interposed to this instruction based: First, upon a constitutional ground; or, second, upon the theory that the appellant ·is being put in jeopardy twice for the same criminal offense. See Hendrickson v. Kingsbury, 21 Iowa 379. Consequently we do not discuss, or express any opinion whatever upon, the constitutional or former jeopardy questions hereby expressly reserved.

We have now considered all the material propositions argued by appellant.

"The grounds stated for reversal 'must be argued or they

1388

will be considered abandoned.' '' Central State Bank v. Herrick, 214 Iowa 379.

See, also, Miller v. Swartzlender & Holman, 192 Iowa 153.

Wherefore, the judgment of the district court should be, and hereby is, affirmed.—Affirmed.

WAGNER, C. J., and EVANS, MORLING, and GRIMM, JJ., concur.