STATE of Missouri, at the relation of Robert J. SMITH, Administrator of the Estate of John Galt, deceased, Relator,

v.

The Honorable Douglas W. GREENE, Judge of the Circuit Court of Greene County, Missouri, Respondent.

No. 57790.

Supreme Court of Missouri, En Banc.

April 9, 1973.

Rehearing Denied May 14, 1973.

Merritt & Merritt, Oklahoma City, Okl., Farrington, Curtis & Strong, Thomas Strong, Lincoln J. Knauer, Springfield, for relator.

Morin, Dickstein, Shapiro & Gallagan, Washington, D. C., Williams, Connolly & Califano, Washington, D. C., Daniel J. Leary, Joplin, and Woolsey, Fisher, Clark & Whiteaker, Stephen P. Seigel, Springfield, for respondent.

SEILER, Judge.

Respondent announced his intention, unless prohibited, to strike the punitive damages portion of relator's petition for damage to personal property. This court has jurisdiction over original writs, Art. V, Sec. 4, Mo.Const.1945, V.A.M.S., and assumes jurisdiction over this case after relator first applied to the Court of Appeals, Springfield District, which denied his petition for writ of prohibition without prejudice.

This personal property damage suit by the administrator, and an action for the wrongful death of John Galt by the widow with which it has been consolidated for trial, arose out of occurrences on September 30, 1970. On that date a truck, carrying explosives, owned by Tri-State Motor Transit Company and driven by Galt was struck by rifle fire and exploded. Galt was killed and his clothing, pocket book, money and personal effects, valued at $100.00 were destroyed.

Relator's petition in circuit court alleges that on September 14, 1970, Tri-State Motor Transit was struck by members of Teamsters Local 823 and the strike continued through the time of Galt's death; that two teamsters, subsequently convicted for

the second degree murder of Galt,[1] were acting as agents for the union at the time of Galt's death; and that union officials ordered harassment, threats and physical assaults on drivers still working ignoring the strike. The petition seeks actual damages of $100.00 and punitive damages of $80,000.

Defendants, named officials representing the class consisting of the membership of the International Brotherhood of Teamsters and Local 823, filed a motion to strike the prayer for punitive damages, which, as said, respondent proposes to sustain, unless prohibited. This court sustained relator's petition for a writ of prohibition and issued a provisional rule, which we now make absolute.

■ Sec. 537.010, RSMo 1969, V.A.M.S., provides: "For all wrongs done to property rights or interest of another, for which an action might be maintained against the wrongdoer, such action may be brought by the person injured, or, after death, by his executor or administrator, against such wrongdoer . . ." This is declaratory of the common law, Toomey v. Wells, 218 Mo.App. 534, 280 S.W. 441, 442 (1926). When Missouri adopted the common law in 1816, Freie v. St. Louis-San Francisco Railway Co., 283 Mo. 457, 222 S.W. 824, 825 (1920), including 4 Edw. III, Ch. 7, it had not yet been expanded to allow maintenance of actions in tort against the estate of the wrongdoer. Administration, Art. II, Sec. 24, RSMo 1835, our first general survival statute, (which has been carried forward virtually unchanged and is now Sec. 537.010, supra) codified the common law as it existed in 1816 and, in addition, allowed actions against the estate of the wrongdoer. Survival of causes of action was emphasized by the inclusion of the descriptive words: ". . . in the same manner and with like effect, in all respects, as actions founded upon contracts."[2]

Respondent contends that relator's personal property action is simply a ruse to thwart the monetary limitations on wrongful death actions set by Sec. 537.090, RSMo 1969, V.A.M.S., maintaining the substance, not the form, of the claim is controlling.

But the substance of the claim here is not the wrongful death. It is property damage, as respondent in effect recognizes in his brief when he says: "This is not to say that an action under Sec. 537.010 may not be brought if the decedent were in pos-

---

1. The conviction of one of the men, Bobby Lee Shuler, was affirmed in State v. Shuler, 486 S.W.2d 505 (Mo.1972). The other, Gerald Bowden, pleaded guilty to second degree murder.

2. It is clearly understood that contract actions, even at common law, survived the death of either party, Holdsworth, History of English Law (3rd Ed.) Vol. III, pp. 576–85.

 Respondent suggests the correct meaning of Sec. 537.010 is that survival actions can be brought only to accomplish what could be done in an action founded on contract, and the rule being that generally punitive damages are not recoverable in a contract action, it follows punitive damages cannot be allowed in a survival action for tortious damage to personal property. If we were to adopt this theory, we immediately would get into different measures of damages, third party beneficiary problems, implied rights, etc., so that we would have two sets of rules governing tort actions, changing from one to the other when death occurred. We do not believe the legislature intended to incorporate general contract law into actions for tort by inserting the words "in the same manner and with like effect, in all respects, as actions founded upon contract."

 Further, the fact that punitive damages are not recoverable in an action on contract and hence could not be recovered in a contract survival action bears no relationship to whether punitive damages should be recovered in a tort survival action. Generally, punitive damages are recoverable in a tort action for damage to property, as discussed, infra. So whether they are recoverable in a tort survival action, which is to survive in the same manner as contract actions survive should not depend on the fact that no punitive damages are recoverable in a contract action, survival or otherwise.

session of substantial and not incidental property at the time of death. It is readily admitted that an administrator's action may be brought for damages to property under Sec. 537.010 when the damage to the property is separate and distinct and not incidental to the killing of the decedent. Thus, if the decedent had been driving his own automobile at the time of his death, there is no dispute that an action could have been brought for the damage to this property . . ."

Such a distinction would allow a property damage claim where the value of the property destroyed was great, but not when it was small. It would be an unjust criterion for determining causes of action to deny access to the courts to those who have their property of small value destroyed merely because its value is small and "incidental". That wrong is just as great as the wrong done to the owner of property of great value.

◼ The property damage action is not a ruse but a valid cause of action. In this case, a single set of facts gave rise to two separate and distinct causes of action, one for John Galt's wrongful death, which vests in those persons specified in the statute and which is not subject to his creditors, and another for the destruction of his personal property, which is for the benefit of his estate and is subject to his creditors.

Having established that a cause of action exists, as the trial court recognized, for the destruction of John Galt's personal property, the primary issue is what damages are recoverable in the action. We first consider Sec. 537.330, RSMo 1969, V.A.M.S., which reads: "If any person shall maliciously or wantonly damage or destroy any personal property, goods, chattels, furniture or livestock, the person so offending shall pay to the party injured double the value of the things so damaged or destroyed . . ."

Relator maintains the intent of the legislature was not to make Sec. 537.330 the ex-clusive remedy for malicious or wanton destruction of property, but merely to make it a supplemental remedy with an increased measure of special damages which could be relied on if desired. He points out that at common law, punitive damages are discretionary with the jury, and even if plaintiff proves the required elements for punitive damages, the jury might not allow anything more than actual damages, or, on the other hand, might allow a substantial amount in punitive damages. If, however, a plaintiff decides to avail himself of Sec. 537.330, his measure of damages would be limited to double the value of the property but the doubling would be mandatory.

Respondent contends the statute sets the exclusive measure of damages in this case, relying on Sec. 1.010, RSMo 1969, V.A.M.S., which states that no act of the legislature shall be invalid because it conflicts with the common law and all acts shall be liberally construed to effectuate their true meaning and intent.

Sec. 537.330 has been on the books since 1866. Apparently it has never been interpreted at the appellate level. However, two other statutes pertaining to damages for trespass which were in existence prior to Sec. 537.330 and to which Sec. 537.330 seems to be a companion, have been. One is Sec. 537.340, dealing with damages to trees, timber, or parts of the realty and requiring ". . . the person so offending shall pay to the party injured treble the value of the things so injured . . ." The other is Sec. 537.350, dealing with removing fences and requiring the defendant ". . . shall pay to the party injured . . . double the amount of damages he shall sustain . . ." All three statutes deal with acts in the nature of trespass and the multiple damage language is notably similar. The treble damage statute has been held not to take away the common law right of action, Tackett v. Huesman, 19 Mo. 525 (1854); Walther v. Warner, 26 Mo. 143 (1854), and it must be pleaded in order to apply. Sub silentio, the same has been held of the double damages statute on

fences, Albi v. Reed, 281 S.W.2d 882 (Mo. 1955).

We are of the opinion the same holds true of Sec. 537.330. It makes no overt attempt to change the common law. It contains no language referring to "exclusive remedy" or "exclusive measure of damages". The legislature could well have envisioned these statutes as supplemental choices offering advantages in some situations over a common law action. We are not persuaded that Sec. 537.330 abrogated the common law right of punitive damages absent some clear legislative intent to do so, and we find no such intent. It should also be noted that if Sec. 537.330 were the exclusive remedy for damage to personal property, then the punitive damages awards in numerous property damage cases far exceeding double the damage done, of which Beggs v. Universal CIT, Corp., 409 S.W.2d 719 (Mo.1966), and Coonis v. Rogers, 429 S.W.2d 709 (Mo.1968), are illustrative, could not have been upheld.

Respondent next maintains that only actual damages are recoverable since they are all that are contemplated by Sec. 537.-010, the survival statute, supra; and that punitive damages are personal to the injured person and hence must be sued for prior to death.

Respondent cites two cases in support of his proposition that only actual damages are allowable, Munger v. Equitable Life Assurance Society, 2 F.Supp. 914 (W.D.Mo.1933) and Gilkeson v. Missouri Pacific Railway Co., 222 Mo. 173, 121 S. W. 138 (1909). Close examination of these cases reveals that the question of punitive damages was not raised in either. They dealt solely with the issue of what constitutes "property rights or interest" within the meaning of the survival statute. Respondent's other case is Jenny v. Jackson, 46 S.W.2d 418 (Tex.Ct.App.1932), which does not support his position. There the Texas court denied punitive damages in a death action because there

was no actual damage to support the award of punitive damages. Sec. 537.010 is a survival statute and does not contain any mention of damages, and since damages are merely incidental to the cause of action, we look, absent legislative intent to the contrary, to damages normally allowed in a particular cause of action. In Missouri punitive damages may be recovered for damage to personal property. Coonis v. Rogers, supra; Beggs v. Universal CIT Corp., supra. We overrule the contention that punitive damages are outside the scope of Sec. 537.010.

Respondent, as said, also contends that punitive damages are personal and may not be recovered unless the suit is brought prior to the death of the person wronged. Fleming Oil Co. v. Watts, 193 S.W.2d 979 (Tex.Civ.App.1946), is cited as a leading case expounding this view, but the real holding is based on Texas constitutional provisions limiting the class of claimants who can recover punitive damages, a factor not present here. Union Mill Co. v. Prenzler, 100 Iowa 540, 69 N.W. 876 (1897), is also cited, where the Iowa court reasoned that damages for pain and suffering, and similarly punitive damages, were so personal in nature as to necessitate the person wronged filing the suit. The Iowa court, however, reexamined its position in Fitzgerald v. Hale, 247 Iowa 1194, 78 N. W.2d 509, 511 (1956) and concluded: "In actions in the second group [referring to actions commenced after the death of person wronged] this court has held the element of pain and suffering does not survive. In effect, the statutory language, *all causes of action shall survive* is interpreted to mean merely, *all actions shall survive.* The effect of the rule thus formulated is that whether recovery for pain and suffering is barred [and similarly punitive damages] depends wholly on whether the action was started after or before death. It is apparent the results of this method of determining elements of damage will not be logical nor uniform and in some cases will be harsh . . ."

"Moreover, these holdings overlook a basic difference between death acts and survival acts. . . Under a survival statute the recovery is for such damages as deceased himself might have recovered had he survived the injury and brought the action . . ."

The present Iowa position is found in Leahy v. Morgan, 275 F.Supp. 424, 425 (N.D.Iowa 1967): " . . . [The Iowa survival statute] is a true survival act, one which is intended to preserve those causes of action which existed at the time of the injured party's death. The public policy underlying exemplary damages is to punish the wrongdoer. Logic dictates that if the wongdoer may be punished if his victim lives, then surely he should not escape retribution if his wrongful act causes a death." See also Claude v. Weaver Construction Co., 261 Iowa 1225, 158 N.W.2d 139, 143 (1968), a nuisance case not involving the survival question, for the present Iowa theory of punitive damages. This view is in accord with Missouri's policy that punitive damages are not compensatory, but are imposed for the purpose of punishment and deterrence to prevent the wrongdoer or others from engaging in the same type of act again. Chappell v. City of Springfield, 423 S.W. 2d 810, 814 (Mo.1968); Beggs v. Universal CIT Corp., supra, 409 S.W.2d at 724. This policy should not be thwarted merely because the wrongdoer manages to kill the party wronged or the party happens to die before the action can be brought. Any change in this policy or the limitation of the doctrine of punitive damages in instances where they now exist should come from the legislature and not from the courts.

Respondent also contends that allowance of punitive damages would circumvent the limitation on wrongful death recoveries, and be a double award, since Glick v. Ballentine Produce, 396 S.W.2d 609 (Mo.1965), sanctioned increased damages, up to the statutory limit because of aggravated circumstances. The circumvention theory does not stand up in light of our earlier finding that two separate and distinct causes of action exist. Moreover, duplication of damages is impossible where there are two causes of action. The wrongful death damages begin with the death of the person wronged. The survival action damages end with the death of the person wronged. There is no overlap or duplication of damages.

Finally, it is said we are threatened with a flood of litigation if we allow punitive damages in this case since every victim in a wrongful death action would be wearing clothing. We doubt any such result. All this opinion holds is that relator has properly pleaded a cause of action and prayer for damages which survives. He must still prove his allegations. In the vast majority of cases nothing close to the standard necessary to recover punitive damages will be met. If it has not been met, the trial court has the power, and the duty, to strike that portion of the petition, but only after plaintiff has had the opportunity to meet his burden of proof and has failed, if so.

Prohibition lies in this case. Respondent's argument that the action of the trial court in announcing his intention to strike is mere trial error which can be adequately corrected on appeal is incorrect. Having determined that relator properly pleaded a cause of action and prayer for damages which the trial court will strike unless prohibited from doing so, we cannot deny relator the relief he is entitled to on this question of law and make him seek appeal which will require a considerable length of time, on a purely legal point on which he will prevail. State ex rel. Jakobe v. Billings, 421 S.W.2d 16, 18 (Mo. banc 1967). The trial court has no discretion to rule contrary to the law, State ex rel. Government Employees' Insurance Co. v. Lasky, 454 S.W.2d 942, 945 (Mo.App.1970); State ex rel. Gulf Oil Corp. v. Weinstein, 379 S.W.2d 172, 175 (Mo.App.1964).

Rule absolute.

FINCH, C. J.. and MORGAN and HOLMAN, JJ., concur.

DONNELLY, J., concurs in result in separate concurring opinion filed.

BARDGETT and HENLEY, JJ., concur in result and concur in separate concurring opinion of DONNELLY, J.

DONNELLY, Judge (concurring in result).

I would not decide the questions of law presented in this case until they have been sifted and tested at trial. I concur only in the result.