**Billy R. SMALL, Plaintiff,**

v.

**AMERICAN TELEPHONE & TELEGRAPH COMPANY, et al., Defendants.**

**No. 89–1113–CV–W–1.**

United States District Court,
W.D. Missouri, W.D.

March 27, 1991.

Gregory Bernard King and Cecil D. Williams, Kansas City, Mo., for plaintiff.

Jack W.R. Headley and Sue Phillips, Kansas City, Mo., for defendants.

ORDER

WHIPPLE, District Judge.

Before this court is defendants' Motion for Summary Judgment on Count II of Plaintiff's Complaint, filed August 30, 1990. Plaintiff filed his Memorandum Opposing Defendants' Motion for Partial Summary Judgment on October 3, 1990. Defendants filed their Reply Suggestions on October 10, 1990.

Before the court could rule on the pending motion, plaintiff's counsel advised the court in October that plaintiff was too ill to go to trial. The case was removed from the trial docket by order of the court, dated October 15, 1990. Sometime thereafter, the court was notified that plaintiff died. On December 21, 1990, the court directed the parties to submit briefs on the survivability of plaintiff's employment discrimination claims arising under Title VII, 42 U.S.C. § 2000e et seq., and under 42 U.S.C. § 1981. Pursuant to the court's order, the parties submitted their briefs on January 11, 1991. For the reasons set forth below, the court finds that plaintiff's claims survive his death but will defer ruling on defendants' motion for partial summary judgment.

I. STATEMENT OF FACTS

On November 29, 1989, Billy Small ("Small") filed a two-count Complaint against American Telephone & Telegraph Company ("AT & T") and Paul Werner ("Werner"). Small claimed that he had been discriminated against on the basis of his race pursuant to Title VII, 42 U.S.C. § 2000e et seq. and 42 U.S.C. § 1981.

Small was employed by AT & T in February of 1980. During the course of his employment with AT & T, Small held sever-

al different positions. Just prior to leaving the company, Small held a second-level managerial position.

In August of 1988, during a mid-year evaluation, Small was advised that his position as a second-level manager was being placed "at risk" due to a company-wide downsizing of its management staff. Small received written notification that his position had been placed "at risk" in a letter dated September 16, 1988. Therein, AT & T advised Small

> you have been identified as an At–Risk employee whose employment will be terminated unless you are able to secure a position in another department or organization.

> Please be assured every effort will be made to place you in another department or AT & T company. However, as you are aware, many other organizations and AT & T companies are going through this same process and openings are limited. Enclosed is a Staffing Preference form for your completion and instructions regarding the process.

Between the time Small was notified that his management position was "at risk" and October 14, 1988—the date Small's position as a second-level manager terminated—efforts were made to find another position for him. During this period of time, Small was unable to locate a job comparable to his other second-level managerial position. He was offered a first-level managerial position but declined to take it. This position was available to Small right up until the date of his termination.

In support of his claim under 42 U.S.C. § 1981, Count II of the Complaint, Small alleged several instances of racial discrimination. Small claimed that Werner, his immediate supervisor prior to his termination, failed or refused to assist Small in obtaining a position elsewhere in the company and failed or refused to authorize an extension of Small's termination date to allow him additional time to find another job because of his race. Additionally, Small alleged that AT & T placed his position "at risk" (thereby terminating him) and failed or refused to offer him a position comparable to his second-level managerial position because of his race.

## II. DISCUSSION

### A. *Survivability of Plaintiff's Claims*

■ Whether Small's civil rights claims survive his death are determined by the state's law governing survival of actions. Under 42 U.S.C. § 1988, courts are directed to apply the state's survival law as long as the result is not inconsistent with the United States Constitution and its law. *Robertson v. Wegmann,* 436 U.S. 584, 589, 98 S.Ct. 1991, 1994, 56 L.Ed.2d 554, 566 (1978); *Parkerson v. Carrouth,* 782 F.2d 1449, 1451 n. 3 (8th Cir.1986).

In Missouri, the survival of claims for personal injuries are guided by Mo.Rev. Stat. §§ 537.020 and 537.030. Section 537.-020 states in pertinent part that "[c]auses of action for personal injuries ... whether such injuries be to the health or to the person of the injured party, shall not abate by reason of his death...." Section 537.-030 qualifies § 537.020 by stating that it shall not extend to actions for slander, libel, assault and battery, or false imprisonment.

To date, no court has had occasion to determine whether Title VII or Section 1981 claims survive under the state's survival law. In the absence of case law construing Missouri's law, the parties rely on cases construing other states' survival provisions. In support of his contention that the claims survive, Small relies on *Kilgo v. Bowman Transportation, Inc.,* 789 F.2d 859 (11th Cir.1986), for the proposition that both Title VII and § 1981 claims survive the plaintiff's death. *Kilgo* involved a claim under Title VII and an analysis of the Georgia survival law. Relying on an earlier case that held that state law permitted the survival of claims under 42 U.S.C. § 1983, *Brazier v. Cherry,* 293 F.2d 401 (5th Cir.), *cert. denied,* 368 U.S. 921, 82 S.Ct. 243, 7 L.Ed.2d 136 (1961), the *Kilgo* court determined that Title VII claims likewise survived. Small, in extending the *Kilgo* court's ruling to include actions under Section 1981, proffered that "[c]onsistency requires that actions brought pursuant to 42 U.S.C. § 1981 like actions pursuant to § 1983 should also survive the death of the plaintiff." Plaintiff's Memorandum at 3.

Defendants, in support of their argument that Small's claims abated at his death, primarily rely on *Alsup v. International Union of Bricklayers & Allied Craftsmen, Local Union No. 3,* 679 F.Supp. 716 (N.D.Ohio 1987) and *Carter v. City of Emporia,* 543 F.Supp. 354 (Kan.1982). Both cases involved claims under 42 U.S.C. § 1981 and both held that under state law the claims abated at the plaintiff's death. In so finding, both courts (the *Alsup* court directly relied on the *Carter* court's reasoning) concluded that because the state survival statutes exclude "personal" claims for libel, slander, and malicious prosecution, a claim under Section 1981 should be excluded as being equally "personal" to the plaintiff.[1] *Alsup,* 679 F.Supp. at 720–21; *Carter,* 543 F.Supp. at 356. Relying on this rationale, defendants reason that Title VII claims should not survive because they, likewise, are personal to the plaintiff. Defendants' Brief at 3–4.

The court is not persuaded by the reasoning set forth in *Alsup* and *Carter.* Rather, the court finds that an interpretation of the Missouri survival statute—and its impact on the survival of Title VII and § 1981 claims—can be made without relying on an analysis of another state's survival statute.

Missouri's survival law has been interpreted both broadly and narrowly. The law has been interpreted broadly in the sense that an expansive reading has been given to the phrase "personal injuries." *Gray v. Wallace,* 319 S.W.2d 582, 583–84 (Mo.1958). In *Gray,* the Supreme Court of Missouri was asked to determine if §§ 537.-020 and 537.030 permitted the survival of an action for malicious prosecution. In finding that actions for malicious prosecution survive, the state supreme court, in part, relied on its belief that the state legislature meant to use the expression "personal injuries" in its

broadest and most comprehensive sense because, by excepting the named actions, it demonstrated that it intended to include ... actions for injuries *to personal rights* as distinguished from actions for injuries to the body of the person. It must follow that the legislature intended that the term "personal injuries" was to include all actions for injuries to the person whether to the person's rights or to his body.

319 S.W.2d at 584 (emphasis added). The state supreme court's analysis directly contradicts the sole argument defendants raise in support of their assertion that Small's claims should not survive his death: that claims "personal" to the party abate at his or her death.

Conversely, the law has been interpreted narrowly in that courts have refused to read additional surplusage into the restrictive language of § 537.030. *Gray,* 319 S.W.2d at 585–86 (Mo.1958); *White v. Walsh,* 649 F.2d 560, 562–63 n. 4 (8th Cir. 1981) (citing *Gray* ). The *Gray* court emphatically stated: " ... however much that or other speculation may serve to explain, the fact remains that we must construe the language of present sections 537.020 and 537.030 as it *plainly appears....*" *Gray,* 319 S.W.2d at 586 (emphasis added); *see also White,* 649 F.2d at 563 n. 4; *Pritchard v. Smith,* 289 F.2d 153 (8th Cir.1961) (court of appeals held that claims under section 1983 survive under Arkansas law because only claims for slander and libel are expressly excluded). To the contrary, the courts in *Alsup* and *Carter* were willing to read additional language into the states' survival statutes to reach their decision that claims under Section 1981 abate upon a party's death.

Based on the Supreme Court of Missouri's analysis in *Gray,* and the Eighth Circuit's approval of that language in *White,* this court does not find it appropri-

---

1. Defendants assert that Missouri's survival law is "very similar" to the Ohio and Kansas laws at issue in *Alsup* and *Carter.* While the provisions may be similar, they are by no means identical. All three state laws are similar in that they do not permit the survival of actions for libel and slander. This is not particularly significant. Under the common law, actions for libel and slander ceased to exist upon the death of a

party. Although a majority of the states have adopted survival laws, modifying the common law, most of these statutes specifically exclude libel and slander from their coverage. 1 A. Hanson, Libel and Related Torts ¶ 206 (1969). The Missouri law differs from the Ohio and Kansas laws in that it does not abate an action for malicious prosecution but does abate actions for assault and battery, and false imprisonment.

ate to add to the language of § 537.030. Aside from declining to second guess what the state legislature had in mind when it drafted the law, the state supreme court already has rejected the sole rationale defendants advance in support of their argument for abatement—that civil rights claims are "personal" to Small. Therefore, this court finds that claims under Title VII and § 1981 do not abate upon the death of a party.

■ Having concluded that Small's civil rights claims survive, the court next must decide if any of the damages sought by Small abated at his death. Defendants do not address the issue of damages in their brief. Relying on *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), and *Smith v. Department of Human Services*, 876 F.2d 832, 835 (10th Cir.1989), Small states that his claim for punitive damages in Count II probably does not survive.[2]

The cases Small relies on involve claims brought under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* The court finds that Small's reliance on *Thurston* and *Smith* is misplaced, because the rationale used to find that a claim under the ADEA survives the death of the party significantly differs from the rationale used to find that a federal civil rights claim survives. As stated earlier, the survival of civil rights claims are governed by state law. *See* 42 U.S.C. § 1988. Conversely, federal common law determines whether a claim brought under the ADEA survives. *Smith*, 876 F.2d at 834; *Asklar v. Honeywell, Inc.*, 95 F.R.D. 419, 422–23 (D.Conn.1982). Thus, this court must look to Missouri's survival law—not to federal common law or its application to ADEA claims—to determine if an award for punitive damages survives the death of a party.

The pertinent sections of Missouri's survival law, §§ 537.020 and 537.030, do not address the issue of damages. Additionally, no court has had occasion to determine whether these sections permit an award for punitive damages to survive. However, the Supreme Court of Missouri, in *State ex rel. Smith v. Greene*, 494 S.W.2d 55, 59 (Mo.1973) (en banc) (interpreting § 537.010, survival of actions for damages to personal property), held that absent legislative intent to the contrary the court will rely on what damages normally are allowed in a cause of action to determine whether the relief sought survives the death of a party. *See also Eastern Atlantic Transportation & Mechanical Engineering, Inc. v. Dingman*, 727 S.W.2d 418, 423 (Mo.Ct.App.1987) (citing *Greene* for the proposition that "where a cause of action for which punitive damages may be recovered survives, the claim for punitive damages also survives").

In *Greene*, the state supreme court was asked to determine whether punitive damages could be recovered in an action for damages to personal property under Missouri's survival law. Mo.Rev.Stat. § 537.010. Like §§ 537.020 and 537.030, § 537.010 is silent on the issue of damages. The Supreme Court of Missouri concluded that punitive damages are recoverable in an action under Missouri's survival law. Noting that punitive damages generally are recoverable in a tort action for damage to property, the court stated that the state's policy of awarding punitive damages

> should not be thwarted merely because the wrongdoer manages to kill the party wronged or the party happens to die before the action can be brought. Any change in this policy or the limitation of the doctrine of punitive damages ... should come from the legislature and not from the courts.

*Id.* at 60.

■ Following the supreme court's directive in *Greene*, the court finds that

---

**2.** In Count I (Title VII claim), Small requested reinstatement, back pay, fringe benefits, and costs (i.e. attorney's fees). Complaint at ¶ 29. In Count II (§ 1981 claim), Small restated the damages set forth in Count I and, in addition, requested compensatory damages ("for the humiliation, embarrassment and emotional dis-

tress") and punitive damages. *Id.* at ¶ 39. In light of his death, Small's request for reinstatement is moot. The court will address the survivability of Small's claim for punitive damages. This is the only form of relief that has been called into question.

Small's request for punitive damages survives his death. Under 42 U.S.C. § 1981, punitive—as well as compensatory—damages are recoverable in appropriate circumstances. *Hybki v. Alexander & Alexander, Inc.*, 536 F.Supp. 483, 485 (W.D.Mo. 1982).

### B. *Motion for Partial Summary Judgment*

A movant is entitled to summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Defendants argue they are entitled to summary judgment on Count II because Small fails to state a claim upon which relief can be granted under 42 U.S.C. § 1981. In support thereof, defendants assert that all of Small's allegations of racial discrimination involve "post-contract formation" conduct.[3] In light of the United States Supreme Court decision in *Patterson v. McLean Credit Union*, 491 U.S. 164, 175–78, 109 S.Ct. 2363, 2373, 105 L.Ed.2d 132, 150–51 (1989), conduct relating to the terms and conditions of employment is no longer actionable under § 1981.

In the wake of *Patterson*, courts have disagreed on whether a claim for discriminatory discharge remains actionable under 42 U.S.C. § 1981.[4] In a decision recently vacated and remanded by the United States Supreme Court, the Court of Appeals for

the Eighth Circuit held that a claim for discriminatory discharge was actionable under § 1981. *See Hicks v. Brown Group, Inc.*, 902 F.2d 630, 638–42 (8th Cir.1990) (rehearing and rehearing en banc denied), *cert. granted,* —— U.S. ——, 111 S.Ct. 1299, 112 L.Ed.2d 317 (1991) (case vacated and remanded).

The outcome in *Hicks* likely will turn on the Eighth Circuit's pending en banc decision in *Taggart v. Jefferson County Child Support Enforcement Unit*, 915 F.2d 396 (8th Cir.1990) (rehearing en banc heard 2/1/91). *Taggart* involved a claim for discriminatory termination under § 1981. Although the court of appeals, relying on *Hicks*, found that the plaintiff had an actionable claim under § 1981, it criticized the earlier holding. The *Taggart* court stated that absent the circuit court's decision in *Hicks* it would affirm the district court's dismissal on the grounds that *Patterson* precludes a claim for discriminatory discharge under § 1981. In light of the Eighth Circuit's reconsideration of its holding in *Hicks*, the court does not believe it is timely to rule on defendants' motion for partial summary judgment. Rather, the court will defer ruling on defendants' motion until the Eighth Circuit issues its en banc decision in *Taggart.*

### III. CONCLUSION

Therefore, it is

ORDERED that the plaintiff Billy Small's claims under Title VII, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981 sur-

---

**3.** Three allegations support Small's § 1981 claim: 1) that his position was placed "at risk" (terminated); 2) that Werner failed or refused to assist Small in obtaining another job within the company; and 3) that Werner failed or refused to grant Small an extension of his date of termination so that he could continue to look for a position in the company.

**4.** Cases holding that a claim for discriminatory discharge is not actionable under § 1981: *Williams v. First Union Nat'l Bank*, 920 F.2d 232, 234 (4th Cir.1990); *Wilmer v. Tennessee Eastman Co.*, 919 F.2d 1160, 1162 (6th Cir.1990); *Gonzalez v. Home Ins. Co.*, 909 F.2d 716, 722 (2d Cir.1990); *McKnight v. General Motors Corp.*, 908 F.2d 104, 108–09 (7th Cir.1990); *Courtney v. Canyon Television & Appliance Rental*, 899 F.2d

845, 849 (9th Cir.1990); *Lavender v. V & B Transmissions & Auto Repair*, 897 F.2d 805, 807–08 (5th Cir.1990); *Sherman v. Burke Contracting, Inc.*, 891 F.2d 1527, 1534–35 (11th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 353, 112 L.Ed.2d 317 (1990). Cases holding that a claim for discriminatory discharge is actionable under section 1981 after *Patterson: Mayhue v. St. Francis Hosp.*, 748 F.Supp. 1484, 1486 (D.Kan. 1990); *Kriegel v. Home Ins. Co.*, 739 F.Supp. 1538, 1540 (N.D.Ga.1990) (court declined to follow the Eleventh Circuit's holding in *Sherman*, because the case did not address whether substantial demotion or constructive discharge remain actionable after *Patterson* ); *Padilla v. United Air Lines*, 716 F.Supp. 485, 489–90 (D.Colo.1989).

vive his death under Missouri law, Mo.Rev. Stat. §§ 537.020 and 537.030. It is further

ORDERED that the court will defer ruling on defendants' Motion for Summary Judgment on Count II of Plaintiff's Complaint pending the outcome of the Eighth Circuit's decision in *Taggart v. Jefferson County Child Support Enforcement Unit.*