**Brenda MEDRANO, Administratrix of the Estate of Rogelio Galvan aka Agustin Fernado Martinez, Deceased, and as Parent and Next Friend of Flor Carolina Martinez Medrano, a Minor, and Jose Ruben Lara Buendia, Plaintiffs,**

v.

**MCDR, INC. and M.A. Mortenson Company, Defendants.**

No. 04–2425–BP.

United States District Court,
W.D. Tennessee,
Western Division.

March 31, 2005.

Jeffrey S. Rosenblum, Kirk A. Caraway, Rosenblum & Reisman, Ralph Noyes, Law Office of Ralph Noyes, Memphis, TN, for Plaintiffs.

Robert B. Hale, Glankler Brown, PLLC, Mark Anthony Lambert, Allen Summers Simpson Lillie & Gresham, PLLC, Memphis, TN, David J. Goldstein, Faegre & Benson LLP, Minneapolis, MN, for Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

BREEN, District Judge.

This action involves state tort and federal and state discrimination claims by Plaintiffs Brenda Medrano as the Adminstratrix of the Estate of Rogelio Galvan ("deceased") and as parent and next friend of Flor Carolina Martinez Medrano, a minor, and Jose Ruben Lara Buendia against Defendants MCDR, Inc. ("MCDR") and M.A. Mortenson Company ("Mortenson"). Plaintiffs allege that the Defendants unlawfully discriminated against them on the basis of their race and national origin in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, as amended, 42 U.S.C. § 1981, and the Tennessee Human Rights Act ("THRA"), Tenn.Code Ann. § 4–21–101 *et seq.* Additionally, the Plaintiffs assert that Mortenson violated Tennessee safety regulations and .committed acts of negligence, negligence *per se*, misrepresentation, and outrageous conduct under Tennessee common law. The Defendants seek dismissal of the complaint pursuant to Rule 12(b)(6); Federal Rules of Civil Procedure. As the Plaintiffs have filed their responses, the motion is appropriate for disposition.

## FACTS

In 2002, Mortenson was selected to perform labor and furnish materials for the construction of the FedEx Forum in Memphis, Tennessee. (Am. Compl. at 4, attached as Ex. A to Mot. Am. Compl. ("Am.Compl."); Mem. Supp. Mot. Dismiss Def., M.A. Mortenson Company at 4 ("Mortenson Mem.").) As the general contractor for the project, Mortenson temporarily relocated some of its long-term managerial employees to Memphis while hiring local short-term employees and entering into subcontracts with other entities. (Mortenson Mem. at 4.) Another company working on the project was MCDR, Inc., a Memphis-based contractor that employed a number of carpenters including the deceased, Rogelio Galvan, a Hispanic. (Am. Compl. at 4.) Plaintiff Buendia, also Hispanic, was hired by Mortenson to perform work on the FedEx Forum. (Am. Compl. at 4.) In their complaint, Plaintiffs allege that the Defendants discriminated against Hispanic workers by paying less compensation than what was paid to Caucasian workers who performed the same jobs. (Am. Compl. at 5–6.) Additionally, according to the Plaintiffs, MCDR and Mortenson required Hispanic employees to perform more dangerous jobs than their Caucasian workers.

On June 5, 2003, a Mortenson supervisor allegedly asked two Caucasian employees to perform a dangerous task which they refused to do. (Am. Compl. at 6.) Plaintiffs allege that the supervisor then threatened them by stating that they would be terminated if they refused to perform the same work. (Am. Compl. at 6.) Plaintiffs assert that the task was not in compliance with the Tennessee Occupational Safety Health Administration ("TOSHA") but agreed to do it for fear of losing their jobs. (Am. Compl. at 6.) Plaintiffs submit that Mortenson represented to them and others that it had a "zero tolerance" safety policy where any employee could refuse to perform a particular job if the employee felt that it posed a threat of danger to that employee. (Am. Compl. at 6–7.)

On June 5, Plaintiffs were building a molding wall, called a "form," made of wood and which was then filled with cement. The form would then be stripped away leaving the concrete wall supported by other means in order to prevent it from collapsing. (Mortenson Mem. at 5.) The deceased and Buendia were attempting to strip the form at a height of approximately forty feet when the wall collapsed thereby causing injury to the Plaintiffs. (Mortenson Mem. at 6–7.) The Plaintiffs claim they were the victims of unlawful discrimination because they were required to perform dangerous work which non-minority employees could refuse without retribution. Plaintiffs also allege that Mortenson was negligent in failing to provide a safe working environment and safety equipment, in failing to follow safety rules, and in failing to supervise employees and supervisors. Additionally, Plaintiffs claim that Mortenson was negligent as a matter of law in not complying with TOSHA regulations. Finally, Plaintiffs seek to recover for Mortenson's misrepresentation regarding its zero tolerance safety policy and its intentional/reckless conduct in asking the Plaintiffs to perform such a dangerous task, constituting outrageous conduct.

## STANDARD OF REVIEW

In ruling on a Rule 12(b)(6) motion, a court must "construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief." *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir.1998). However, the court is

not required to "accept as true legal conclusions or unwarranted factual inferences." *Id.* In order to avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all the material elements of the claim to sustain recovery under some viable legal theory. *Wittstock v. Mark A. Van Sile, Inc.,* 330 F.3d 899, 902 (6th Cir.2003); *Lewis v. ACB Bus. Services, Inc.,* 135 F.3d 389, 406 (6th Cir.1998). The court's narrow inquiry on a motion to dismiss under Rule 12(b)(6) "is based upon whether 'the claimant is entitled to offer evidence to support the claims,' not whether the plaintiff can ultimately prove the facts alleged." *Osborne v. Bank of Am., Nat'l Ass'n,* 234 F.Supp.2d 804, 807 (M.D.Tenn.2002) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974)).

## ANALYSIS

Mortenson argues that dismissal of the Plaintiffs' complaint is appropriate under Rule 12(b)(6) for the following reasons: (1) Medrano lacks standing to sue; (2) Mortenson was the statutory employer of the deceased; (3) Plaintiffs' tort claims are barred by the exclusivity rule under the Tennessee Workers' Compensation Law ("TWCL"); (4) Plaintiffs' discrimination causes of action are also barred by the TWCL; (5) the deceased's discrimination claims do not survive his death; and (6) Buendia's wage discrimination claim fails to state a claim for relief. The Court will consider all of the Defendants' arguments in turn.

### I. Medrano's Standing to Sue

Along with damages sought in her representative capacity, Medrano seeks, individually, damages for loss of consortium based on the death of her common-law husband. Although Mortenson does not dispute that Medrano has standing to assert claims on behalf of the estate of Galvan as its administratrix and as a parent of the deceased's child, Flor Carolina Martinez Medrano, it maintains that the Plaintiff lacks standing to sue in her individual capacity. The Plaintiff insists that she was the deceased's common-law wife while they lived in Mexico. Both parties agree that if the law of the state in Mexico where Medrano and Galvan lived recognized common-law marriages, then this Court should recognize the marriage as valid in Tennessee. *See Morgan v. McGhee,* 24 Tenn. (5 Hum.) 13 (1844) (stating that all marriages consummated pursuant to the usage of a foreign country are recognized as valid by the laws of Tennessee). Defendant points to cases interpreting the law of two states in Mexico in support of its position. *See Rosales v. Battle,* 113 Cal.App.4th 1178, 7 Cal.Rptr.3d 13 (2003); *Nevarez v. Bailon,* 287 S.W.2d 521 (Tex.Civ.App.1956). However, Medrano insists that these decisions are not applicable to the present case because they do not interpret the law of the state in which Medrano or Galvan resided. In *Nevarez,* the court was interpreting the law of the State of Chihuahua as it existed in 1956. *See* at 522. In *Rosales,* the court considered the law of the State of Baja California in Mexico. In the present case, Medrano and the deceased lived in the Mexican State of Tamaulipas. (Pl.'s Resp. Def. M.A. Mortenson Company's Mot. Dismiss ("Pl.'s Resp.") at 17.)

A challenge to a plaintiff's standing to sue is appropriately analyzed under Rule 12(b)(1) as a challenge to the court's jurisdiction. *See Catalyst & Chemical Servs., Inc. v. Global Ground Support,* 350 F.Supp.2d 1, 7 (D.D.C.2004). Under Rule 12(b)(1), the court must accept all factual allegations contained in the complaint as true. *Id.* "At the same time, the plaintiff bears the burden of [alleging facts] estab-

lishing the court's jurisdiction." *Id.* "Because standing is fundamental to the ability to maintain a suit, and because the [c]ourt has saddled the complainant with the burden of clearly alleging facts sufficient to ground standing, we are of the opinion that, where standing is at issue, heightened specificity is obligatory at the pleading stage." *United States v. AVX Corp.*, 962 F.2d 108, 116 (1st Cir.1992); *Catalyst & Chemical Servs., Inc.*, 350 F.Supp.2d at 7 (stating that "[a] motion to dismiss ... for lack of standing ... involves an examination of the face of the complaint ... and the plaintiff's allegations therein require closer scrutiny than they would under the Rule 12(b)(6) motion to dismiss standard") (internal quotations and citations omitted). "The complaint must set forth reasonably definite factual allegations, either direct or inferential, regarding each material element needed to sustain standing." *AVX Corp.*, 962 F.2d at 116.

■ In the complaint, Medrano has alleged that she was Galvan's common law wife under the law of the Mexican State of Tamaulipas. Accepting Plaintiff's factual allegations as true and viewing the complaint under a Rule 12(b)(1) analysis, *AVX Corp.*, 962 F.2d at 116, the Court finds that the Plaintiff has met her burden of alleging facts which if true would establish that she has standing. As the parties have acknowledged, if the State of Tamaulipas recognizes common law marriages, then this Court should also recognize such marriages as valid under Tennessee law. *See Morgan*, 24 Tenn. (5 Hum.) 13. Moreover, the cases on which the Defendant relies are inapposite because they do not address the law of the State of Tamaulipas. Accordingly, the Court DENIES Mortenson's motion to dismiss Medrano's individual claim for damages for loss of consortium.

## II. Mortenson as the Deceased's Statutory Employer

■ As Galvan worked for MCDR which was allegedly a subcontractor of Mortenson, the Defendant submits it is a statutory employer of the deceased, thereby precluding Medrano, as the estate's representative from pursuing tort claims against it based upon the exclusive remedy provisions of the TWCL, Tenn.Code Ann. § 50–6–101 *et seq.* (1999 Repl. & Supp. 2003). The TWCL states that "the rights and remedies ... granted to an employee subject to the Workers' Compensation Law on account of personal injury or death by accident ... shall exclude all other rights and remedies of such employee ... on account of such injury or death." Tenn. Code Ann. § 50–6–108. Therefore, argues Defendant, if Mortenson is found to be an employer of Galvan for purposes of the TWCL, then Plaintiff's tort claims would be barred. *See Williams v. Carolina, C. & O. Ry. Co.*, 154 Tenn. 224, 289 S.W. 520, 521–22 (1926) (stating that when the Act applies it precludes all common-law actions against the employer). Tennessee Code Annotated § 50–6–113 provides in part that "[a] principal, or intermediate contractor, or subcontractor shall be liable for compensation to any employee injured while in the employ of any of the subcontractors of the principal, intermediate contractor, or subcontractor engaged upon the subject matter of the contract to the same extent as the immediate employer." Tenn. Code Ann. § 50–6–113(a). Generally, courts employ one of two tests to determine whether a general contractor is a statutory employer of an employee of a subcontractor: "(1) whether the work being performed by the [employee] in question ... is the same type of work usually performed by the [general contractor] ... or is part of the regular business of the company [or] (2) whether [it] ... has the

right to control [the employee in question]." *Barber v. Ralston Purina*, 825 S.W.2d 96, 99 (1992) (citing *Stratton v. United Inter-Mountain Telephone*, 695 S.W.2d 947 (Tenn.1985); *Hendrix v. Ray-Ser Dyeing Co.*, 224 Tenn. 690, 462 S.W.2d 483 (1970)).

Mortenson argues that the complaint establishes that it was the statutory employer of the deceased under either test. With respect to the first, Defendant submits that Galvan performed the same type of work as undertaken by Mortenson's employees and worked side-by-side with Buendia, a Mortenson employee, at the time of the accident. (Mortenson Mem. at 11.) As to the second test, Mortenson contends that the complaint, in three separate paragraphs, plainly establishes that Mortenson had the right to control Galvan's employment duties: "Mortenson employees routinely exercised dominion and control over [decedent's] work assignments" (Am. Compl. at 2); "Plaintiffs were routinely supervised by both Defendants ... and were routinely given instructions from employees of both Defendants" (Am. Compl. at 5); and "Defendant Mortenson's supervisor ... threatened Plaintiffs with termination if they refused to perform the same task that the Caucasian employees had already refused to do." (Am. Compl. at 6–7.)

In response, Plaintiff argues that MCDR was not a subcontractor of Mortenson but instead an additional general contractor. (Pl.'s Resp. at 18.) She insists that the TWCL does not prohibit an employee of one general contractor from bringing a tort action against another general contractor. (Pl.'s Resp. at 18–19.) In support of that assertion, Medrano cites to Tennessee statutory law applicable to "General Contractors." *See* Tenn.Code Ann. § 62–6–102. Additionally, Plaintiff submits that having two "general contractors" working on the same project is not

unprecedented. *See Moore Constr. Co., Inc. v. Clarksville Dept. of Elec.*, 707 S.W.2d 1, 4 (Tenn.Ct.App.1985) (stating that "both general contractors ... held a preconstruction conference at the job site"). However, the authority cited does not provide support for Medrano's argument that Mortenson was not Galvan's statutory employer. Nonetheless, Medrano contends that she should be permitted to conduct discovery to ascertain the nature of Mortenson's and MCDR's involvement in the project and that the court should not simply accept Mortenson's self-serving statement that MCDR was Mortenson's subcontractor as true. (Pl.'s Resp. at 20.)

■ At this juncture, the Court is required to accept the allegations contained in the complaint as true and view them in the light most favorable to the Plaintiff. *See Grindstaff*, 133 F.3d at 421. Plaintiff has alleged that MCDR was not a subcontractor of Mortenson but instead a separate general contractor not under the control of Mortenson. If Medrano's contention is true, the Plaintiff could conceivably pursue a claim against a separate party not protected by the exclusive remedy provisions. *See Curtis v. G.E. Capital Modular Space*, 155 S.W.3d 877, 884–84 (Tenn.2005) (stating that "an injured employee who is awarded workers' compensation benefits does not relinquish his or her right to also pursue tort claims against third parties"). Therefore, the Court finds that it cannot conclude, based on the bare allegations of the Defendant, that Mortenson was the statutory employer of the deceased and thus insulated by the TWCL.

### III. Plaintiffs' Tort Claims

■ Mortenson maintains that all of the common law tort claims of the Plaintiffs are barred by the exclusivity rule of the TWCL. Because the Court has determined

that it cannot, at this juncture, find that Mortenson was a statutory employer of the deceased, Defendant's arguments are only applicable to Buendia, who was concededly Mortenson's employee. In Buendia's response to the Defendant's motion to dismiss, he fails to address the exclusion of tort claims against an employer when the TWCL applies. *See Lennon Co. v. Ridge*, 219 Tenn. 623, 412 S.W.2d 638, 641 (1967) (the TWCL provides that an employee may not bring a cause of action under the common law on account of personal injury or death); *Mize v. Conagra, Inc.*, 734 S.W.2d 334, 336 (Tenn.Ct.App. 1987) (stating that "allegations that defendant knowingly permitted dangerous working conditions to exist and violated safety regulations [are] not sufficient to subject [the employer] to common law liability" under the TWCL). Accordingly, based upon Tennessee case authority and Plaintiff's apparent concession of the issue, the Court DISMISSES Buendia's state tort claims of negligence, negligence *per se* (TOSHA violation), and misrepresentation. However, "[t]here is an exception to the exclusive remedy provisions ... [i]f the employee is able to prove the employer had an actual intent to injure the employee." *Gonzales v. Alman Constr. Co.*, 857 S.W.2d 42, 46 (Tenn.Ct.App.1993) (citing *Mize*, 734 S.W.2d 334; *King v. Ross Coal Co.*, 684 S.W.2d 617 (Tenn.Ct.App.1984)). As to Buendia's allegation that Mortenson committed acts which constituted the common law tort of intentional infliction of emotional distress (outrageous conduct), the Court DENIES Defendant's motion to dismiss.

## IV. Discrimination Claims Barred by the TWCL

██ Mortenson asserts that the Plaintiffs' discrimination claims under 42 U.S.C. § 1981 and the THRA are also barred by the exclusive remedy provisions of the TWCL.[1] The TWCL applies to a "personal injury or death by accident arising out of and in the course of employment without regard to fault as a cause of the injury or death." Tenn.Code Ann. § 50–6–103(a) (1999). An injury occurs "in the course of employment" when it occurs at work. *Anderson v. Save–A–Lot, Ltd.*, 989 S.W.2d 277, 279 (Tenn.1999) (applying a time, place and circumstances test to determine whether the injury occurs in the course of employment). Therefore, since the Plaintiff complains about the Defendant's conduct and treatment while he was working, the injury occurred in the course of his employment. An injury "arises out of the employment" if it "followed as a natural incident of [the] employee's work[,][was] contemplated by [a] reasonable person familiar with the whole situation as [a] result of [the] exposure occasioned by nature of [the] employment[,] ... [appeared] to have had its origin in a risk connected with the employment and ... flowed from that source as a rational consequence." *T.J. Moss Tie Co. v. Rollins*, 191 Tenn. 577, 235 S.W.2d 585, 586 (1951). For example, " 'an injury arising from an assault on an employee committed solely to gratify [the employer's] personal ill-will, anger, or hatred, or an injury received in a fight purely personal in nature with a fellow employee, does not arise out of the employment within the meaning of the workmen's compensation acts.' " *Anderson*, 989 S.W.2d at 281, 288 (emphasis omitted) (quoting 82 Am. Jur. 2d *Workmen's Compensation* § 330, at 128 (1976)).

In the sexual harassment context, the Tennessee Supreme Court has specifically

---

1. As stated above, because only Buendia is presently considered an employee of Mortenson, Defendant's arguments do not apply to the deceased, Galvan.

addressed whether an injury resulting from an employer's harassing conduct is one arising out of the employment. In *Anderson*, the court held that sexually harassing conduct is "purely personal in nature and not related to furthering the business of the employer." *Id.* at 288. Therefore, such conduct was not compensable under the TWCL because there was no indication that the nature of her employer's business was such that the "risk of harassment was a reasonably considered hazar[d] so that it was a normal component of [her] employment relationship." *Id.* at 288 (citations and internal quotations omitted). The court also concluded that a contrary ruling "would thwart the intent of the framers of the [Tennessee Human Rights Act as well as Title VII] to provide sexual harassment victims with a full recovery." *Id.* at 289–90.

 A plaintiff can also avoid the exclusive remedy provisions of the TWCL if the employee is able to prove that the employer had an actual intent to injure the employee. *See Gonzales*, 857 S.W.2d at 46 (citations omitted). "However, it takes more than a mere inference of tortious intent to convert the defendant's negligence into an intentional tort." *Id.* (citation omitted). "Proof of gross negligence or even criminal negligence is not sufficient to establish the requisite and actual intent to injure that allows an employee to maintain a common law action against his employer." *Id.* (citations omitted). "[K]nowingly permitting a hazardous work condition to exist, knowingly ordering [an employee] to perform an extremely dangerous job, [and] wilfully and unlawfully violating a safety statute[ ] ... still fall[ ] short of the kind of *actual intention* to injure that robs the injury of accidental character" for purposes of the TWCL. *Id.* (emphasis in original) (quoting *Mize*, 734 S.W.2d at 336; *King*, 684 S.W.2d at 619).

 The Court concludes that Buendia's discrimination claims are not precluded by the exclusive remedy provisions of the TWCL. The Plaintiff has alleged intentionally discriminatory acts which resulted in his injuries. (*See* Am. Compl. at 8–9.) These contentions alone remove the case out of the exclusivity protection of the TWCL. *Gonzales*, 857 S.W.2d at 46 (citations omitted). Under the Rule 12(b)(6) rubric, the Court is required to view the complaint in the light most favorable to the Plaintiffs and to accept all factual allegations as true. *See Grindstaff*, 133 F.3d at 421. Accordingly, because Buendia must merely plead facts which show that he is entitled to relief, Mortenson's motion to dismiss the Plaintiffs' discrimination claims, at this point, is DENIED.

## V. Medrano's Discrimination Claims Surviving Galvan's Death

Mortenson argues that Plaintiff's discrimination claims under 42 U.S.C. § 1981 do not survive Galvan's death and therefore should be dismissed. The federal statute does not address whether a claim under it abates at the death of the alleged victim. The United States Supreme Court has concluded that issues of survivorship arising in civil rights cases are governed by 42 U.S.C. § 1988(a), which provides that when federal law is "deficient in the provisions necessary to furnish suitable remedies ..., the common law, as modified and changed by the constitution and statutes of the State" shall apply "so far as the same is not inconsistent with the Constitution and laws of the United States ...." *Robertson v. Wegmann*, 436 U.S. 584, 588, 98 S.Ct. 1991, 1994, 56 L.Ed.2d 554 (1978) (concluding that survivorship of a claim under 42 U.S.C. § 1983 is governed by § 1988 which "instructs us to turn to the [law] ... of the [forum] State"); *see also Hamilton v. Rogers*, 573 F.Supp. 452

(S.D.Tex.1983) (stating that § 1988 governs plaintiff's claims under §§ 1981 and 1983). Therefore, the Court must look to Tennessee law as to whether Plaintiff's discrimination claims survive.

Tennessee Code Annotated § 20–5–101 provides that "[a]ctions do not abate by the death, or other disability of either party ... if the cause of action survives or continues." Where a cause of action based on the wrongful act or omission of another exists, only "actions for wrongs affecting the character, [shall] be abated by the death of the party wronged." Tenn.Code Ann. § 20–5–102. In Tennessee, the following have been found to be actions affecting the character of the plaintiff: malicious prosecution, libel, false imprisonment, breach of promise to marry, alienation of wife's affections, and seduction. See e.g., Benton v. Knoxville News–Sentinel Co., 174 Tenn. 658, 130 S.W.2d 105 (1939); Bowman v. Hart, 161 Tenn. 402, 33 S.W.2d 58 (1930). Defendant asserts that discrimination is a wrongful act affecting the character of a plaintiff, relying upon Alsup v. Int'l Union of Bricklayers, 679 F.Supp. 716, 720 (N.D.Ohio 1987), in which a court found that a § 1981 claim was similar to an action for libel or slander which abates at the time of death of the victim. The Ohio district court, citing Carter v. City of Emporia, 543 F.Supp. 354, 356 (D.Kan.1982), reasoned that an action under § 1981 was personal in nature and therefore did not survive the plaintiff's death. Alsup, 679 F.Supp. at 720–21.

In response, Plaintiff argues that the laws of Ohio and Kansas are distinguishable from that of Tennessee. Plaintiff primarily relies on Chess v. Nunley, 319 F.Supp. 1288, 1289 (E.D.Tenn.1970), in which the court found that a claim under 42 U.S.C. § 1983, brought by the surviving spouse, did not abate at the victim's death under the Tennessee wrongful death statute. Medrano points out that she is also bringing this action under the Tennessee's wrongful death statute, Tennessee Code Annotated § 20–5–106, which does not contain a provision precluding the survival of claims affecting character.[2] (See Am. Compl. at 3.)

The Court concludes that Medrano's claim pursuant to § 1981 survives under Tennessee law. The Tennessee statute in question is drafted more narrowly than the ones in the cases cited by the Defendant. Section 20–5–102 only states that actions affecting character do not survive. Tenn. Code Ann. § 20–5–102. Moreover, the Tennessee decisions addressing the issue do not discuss whether the action is one personal in nature in reaching their conclusion. See Benton, 130 S.W.2d at 105; Bowman, 33 S.W.2d at 58. In Small v. American Telephone & Telegraph Co., 759 F.Supp. 1427, 1428–29 (W.D.Mo.1991), the Missouri district court distinguished both Alsup and Carter concluding that, even though actions for slander, libel, assault and battery, and false imprisonment did not survive, the personal nature of the claim was irrelevant in determining whether the action abated at the death of the claimant under Missouri law. Small noted that the Missouri legislature chose to allow several types of personal actions to survive, including personal injury claims. Id. Additionally, as the Defendant acknowledges, several courts interpreting Tennes-

---

2. Section 20–5–106 provides in part that

[t]he right of action which a person ... whose death is caused by the wrongful act ... by another, would have had against the wrongdoer, in case death had not ensued, shall not abate or be extinguished by the person's death but shall pass to the person's surviving spouse and, in case there is no surviving spouse, to the person's children or next of kin; or to the person's personal representative.

Tenn.Code Ann. § 20–5–106.

see's wrongful death statute have concluded that civil rights claims under 42 U.S.C. § 1983 survive the death of the claimant. *See Bailey v. Harris*, 377 F.Supp. 401, 403 (E.D.Tenn.1974); *Troutman v. Johnson City, Tenn.*, 392 F.Supp. 556, 558 (E.D.Tenn.1973). Mortenson has not explained why a § 1983 action would survive under the Tennessee wrongful death statute while a claim under § 1981 would not. This Court declines to add civil rights claims to the list of actions which affect character and are abated at the claimant's death when there is no controlling Tennessee decision on the issue. Thus, the Court concludes that Medrano's discrimination claims did not abate at Galvan's death and DENIES the Defendant's motion.

### VI. *Punitive Damages under § 1981 by Deceased Plaintiff*

 Similar to the survival of claims analysis, the Court will look to Tennessee law pursuant to § 1988 inasmuch as § 1981 is silent as to what damages are recoverable when the plaintiff is a representative of a deceased. Section 1988 provides that state law, to the extent that it is "not inconsistent with the Constitution and laws of the United States," applies when the federal statute necessary to furnish a suitable remedy is deficient. 42 U.S.C. § 1988. Under Tennessee law, "[d]amages recoverable under the survival statute are such as the deceased could have recovered had he lived." *Benton*, 130 S.W.2d at 105. Therefore, because punitive damages may be recovered under § 1981 against a defendant who intentionally discriminates against an employee, Galvan would have been able to recover such damages had he survived. *See Beauford v. Sisters of Mercy–Province of Detroit, Inc.*, 816 F.2d 1104, 1108 (6th Cir.1987) ("a plaintiff who proves a cause of action under § 1981 may recover punitive damages").

Defendant argues, however, that Medrano should not be allowed to seek punitive damages because federal common law prohibits recovery of such damages when the claimant's cause of action survives the death of the claimant. *See Cook v. Hairston*, 948 F.2d 1288, 1991 WL 253302, at *6 (6th Cir.1991) ("The typical rule under the federal common law is that an action for a penalty does not survive the death of the plaintiff.") (citation omitted). The parties do not dispute that punitive damages are penal in nature. *See Landgraf v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). In support of its argument, Mortenson cites to *Earvin v. Warner–Jenkinson Co.*, No. 4:94 CV 977 DDN, 1995 WL 137437, at *2 (E.D.Mo. Mar. 10, 1995), in which the Missouri district court held that a plaintiff's claim for punitive damages under § 1981 abated at his death even though punitive damages are allowed under Missouri law because such an award would be inconsistent with federal common law.

 Medrano asserts that Tennessee and federal law are not inconsistent because § 1988 states that a court is to look to Tennessee law regarding whether punitive damages abate at the death of the Plaintiff. However, Medrano cites to no authority that establishes that the federal common law permits survival of claims for punitive damages. Accordingly, the Court determines that, although Plaintiff's claim for punitive damages under § 1981 would survive under Tennessee law, the claim abates because a contrary result under state law would be inconsistent with federal common law. *See Cook*, 948 F.2d 1288, 1991 WL 253302, at *6. Thus, Medrano's claim for punitive damages under § 1981 is DISMISSED.

### VII. *Plaintiff Buendia's Wage Discrimination Claim*

Finally, Mortenson seeks dismissal of Buendia's wage discrimination claim. Al-

though the Defendant has attached an affidavit regarding Buendia's wage discrimination claim and requests that the Court consider this claim under a Rule 56 summary judgment standard, the Court has discretion when deciding whether to convert a motion to dismiss to one for summary judgment. *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 855 n. 1 (6th Cir.2001). Plaintiff has not attached any affidavits in his response and asserts that a motion to dismiss must be decided on the pleadings. At the time Buendia filed his response, he had not undertaken any discovery or even received Mortenson's answer to the complaint. (Pl.'s Resp. at 16.) Because the Plaintiff had not had an adequate opportunity to conduct discovery on this issue at the time his response was due, the Court, in its discretion, will not consider Defendant's affidavit and will dispose of the motion to dismiss under Rule 12(b)(6). *See J.H. Routh Packing Co.*, 246 F.3d at 855 n. 1 (stating that a court has discretion in deciding whether to exclude affidavits and consider the motion under a Rule 12(b)(6) standard).

 To establish a prima facie case of wage discrimination based on race, "plaintiffs must show membership in a protected class ... and that [they] were performing work substantially equal to that of white employees who were compensated at higher rates than they were." *Anderson v. Zubieta*, 180 F.3d 329, 338 (D.C.Cir. 1999) (citations and internal quotations omitted). Here, Buendia asserts that Mortenson paid him and other Hispanic workers less than Caucasian workers doing the same jobs. (Am. Compl. at 5–6.) Viewing the complaint in the light most favorable to Buendia and accepting all of the factual allegations as true, *see Grindstaff*, 133 F.3d at 421, the Court determines that Buendia has sufficiently alleged a claim of wage discrimination based on his

race. Accordingly, Mortenson's motion to dismiss Buendia's wage discrimination claim is DENIED.

## CONCLUSION

For the reasons set forth herein, Mortenson's motion to dismiss is GRANTED as to Medrano's claims for punitive damages under § 1981 and Buendia's Tennessee common law claims of negligence, negligence *per se*, and misrepresentation. The remainder of the motion is DENIED.